Wesley Glen Smith, a Minor, by Robert W. Smith, His Next Friend and Robert W. Smith, Plaintiffs-Appellees, v. Richard D. Stopher, Administrator of the Estate of Cecil K. Stopher, Deceased, Defendant-Appellant.

Gen. No. 69-87.

Fifth District.

July 20, 1970.

Burton C. Bernard and Joseph R. Davidson, of Granite City, for appellant.

James J. Massa, of Collinsville, for appellees.

MORAN , P. J.

This two-count personal injury suit was filed in the Magistrate Division of the Circuit Court of Madison County by Robert W. Smith on behalf of Wesley Glenn Smith, a minor bicyclist, for personal injuries, and by Robert W. Smith, his father and next friend, for medical expenses against Richard D. Stopher, Administrator of the Estate of Cecil K. Stopher who died after the accident and before the trial. Defendant made appropriate motions for directed verdicts and for judgments notwithstanding the verdicts which were denied. Judgments were entered on verdicts of $2,500 for the

minor bicyclist on Count I, and for $915.75 for his father on Count II for the minor's medical expenses. Defendant appeals.

The only questions on appeal are whether there was sufficient evidence of negligence on the part of the motorist and sufficient evidence of due care on the part of the bicyclist to create questions of fact for the jury.

The accident occurred between a bicycle being ridden by Wesley Glenn Smith, then ten years of age, and a camper type truck of defendant's intestate near the intersection of Olive and California Streets in Collinsville, Illinois. These streets intersect at right angles with Olive Street running north-south and California Street running east-west. The surrounding area is residential and recreational. The back yard of the Helen Rarick residence is in the area adjacent to the northwest corner of the intersection. Her driveway extends from California Street at a point 58 feet west of the west edge of Olive Street. West of the driveway along the north side of California Street is a thirty mile per hour speed sign. Both California and Olive Streets are 21 feet wide. Across from the Rarick residence on the northeast corner of the intersection is Fletcher Field, a fenced sports playground with a frontage on Olive Street of at least 300 feet. This field has a ground level lower than Olive Street so that the fence presents no obstruction to the view when approaching the intersection from any direction. The level of Olive Street, as it approaches California from the north, is slightly upward. The level of California Street, as it approaches Olive from the east, is more sharply upward. These streets intersect at the crest of the hill formed by these two inclines.

Since the motorist died before trial, the minor plaintiff was precluded from testifying to the facts of the occurrence under the Dead Man's Act (Ill Rev Stats

1965, c 51, § 2). Since there were no eyewitnesses to the actual collision, the case is based on circumstantial evidence.

Michael Motsinger, aged ten at the time of the accident and a schoolmate of the minor plaintiff, testified that on October 29 he was at Fletcher Field sitting on the sidelines watching a football game. He heard a woman on the corner holler and turned to look to his left over his shoulder and saw Wesley Smith falling from a bicycle while traveling in a westerly direction on the north edge of California Street. He indicated on a photograph and diagram of the intersection that Wesley fell at a spot approximately 30 to 35 feet west of Olive Street on the North side of California. At the same time he saw a truck, the back of which was six to ten feet in front of Wesley when he was falling. He did not see any impact between the truck and bicycle. After Wesley fell and got up, apparently unhurt, Mike turned around and continued to watch the football game. Shortly thereafter Mike's father arrived at the scene of the collision and Mike later learned that it was his bicycle Wesley had been riding. The front wheel of the bicycle had been turned around and jammed under the frame, but there was no permanent damage.

Richard D. Stopher, son and administrator of the estate of Cecil K. Stopher, called under section 60 of the Civil Practice Act, testified to a conversation he had with his father about the accident sometime in December, 1966, as follows:

Q. "Had your father ever told you it was the bicycle of the boy that made the mark?"
A. "Only by implication."
Q. "And how by implication, what was the nature of your conversation with him?"
A. "Well, we were just traveling along, we were talking about the accident and I asked him, in-

382

quired about it, and he showed me the corner where it happened, and I asked him where he had been hit, and he said in the back."

Q. "Okay."
A. "Then I investigated it later and I just assumed that's what he meant where the bump was."
Q. "So he told you he had been hit in the back, is that right?"
A. "Yes, sir."
Q. "Did he tell you it was also on the right-hand side, right-hand back of his truck?"
A. "Yes."

He testified that later he saw a dent in the right rear fender of his father's truck, directly over the hub cap.

Wendell James testified that as a policeman for the City of Collinsville he investigated the bicycle-truck collision which occurred on October 29, 1966, at the intersection of Olive and California Streets. The accident occurred at about noon when it was dry and overcast. He arrived at the accident scene at least twenty minutes after its occurrence and it was apparent that the camper and bicycle had been moved from their positions at the time of the accident. He never did see the bicycle. He found no skid marks, debris or any other evidence indicating where the point of impact was. The speed limit in this area was 30 miles per hour. He found no indication of excessive speed. He did not know how the accident occurred, but Cecil Stopher told him at the time that Wesley Smith had run into his truck on the right side. He gave inconsistent statements concerning the distance of the truck from the intersection when he arrived at the scene of the accident, at one point stating that the truck was approximately 30 feet from the east edge of Olive Street, and at other points stating the truck was approximately 10 feet west of the speed sign, or approximately 130 feet east of Olive Street. He con-

cluded by stating that he believed the truck was closer to the speed sign than the stop sign, but the truck was facing west on the north side of California. He spoke to Cecil Stopher, who was sitting in the rear seat of his police car, and he did not smell any liquor on his breath. He also testified that he has had occasion to drive on California Street in a westerly direction through the Olive-California intersection and that the incline is not so steep as to cause a driver's view of a bicycle on Olive Street to be obstructed. He stated that one could even see the speed limit sign. This sign was located on the north side of California Street, 140 feet west of Olive.

Helen Rarick testified that she lives on the northwest corner of the intersection of Olive and California Streets and that at the time of the accident she was hanging clothes in her backyard. She did not see the impact. A pickup truck was stopped, heading west, and was west of her driveway. There was also a red station wagon parked on the other side of her driveway. She said she saw a man putting a bicycle into it. She does not know anything about the accident, but on this particular morning there were 150 to 200 children in Fletcher Field. She did not scream nor did she hear anyone else scream at the time of the accident. There were cars parked on both sides of Olive Street and the children were making a lot of noise.

Billy Motsinger, age 37, testified for the defendant that Mike Motsinger, who had testified previously, is his son. On the day of the accident he was driving in the area of Olive and California and saw his son's bicycle. He first thought it was 10 to 12 feet from the corner of Olive and California up on the bank, but after observing the intersection prior to his testifying, he decided it was closer to the driveway when he first saw it. He then testified that when he first saw the truck it was right beside the bicycle. He straightened the

wheel and Wesley Smith later rode it away. He testified that when you are east of Olive Street, driving toward Olive on California, you have to be right up on the intersection before you get a clear view of the houses, cars and bicycles. He also testified that he had never looked to see from what distance he had a clear view of that intersection and that he had been relying on one of defendant's photographs for this observation.

Defendant argues that the record is so devoid of probative evidence of defendant's intestate's negligence and the minor plaintiff's due care that any judgment must be the result of conjecture and speculation. He relies on familiar principles that the negligence on the part of the defendant is a question of fact which must be proved and cannot be based on mere conjecture or speculation; that the mere happening of an accident does not of itself raise any presumption of negligence on the part of the defendant or presumption of due care on the part of the plaintiff; that proof of a mere possibility is not sufficient to prove a fact; that a theory cannot be said to be established by circumstantial evidence unless the facts are of such a nature and so related as to make it the only conclusion that could reasonably be drawn and that it cannot be said one fact can be inferred when the existence of another inconsistent fact can be drawn with equal certainty.

Defendant argues that the evidence proves only that the motorist and bicyclist collided at or near the intersection of California and Olive Streets and that since no witness related any facts which established the routes of either the motorist or the bicyclist or established the conduct of either of them immediately prior to the accident, that any judgment as to the proximate cause of this accident must rely totally on speculation and conjecture and consequently, the plaintiffs have not met their burden of proof.

385

■ While we are mindful of the principles cited by defendant, we are also aware of the principle that the absence of eyewitnesses does not always prevent a case from being established and under such circumstances the law requires only the highest proof of which the case is susceptible or which can reasonably be made. Schwanz v. Sangamo Elec. Co., 294 Ill App 395, 13 NE2d 1007.

■ It is provided by statute that a person riding a bicycle is subject to the same provisions of the Uniform Traffic Act which are applicable to the driver of any other vehicle except those provisions which by their nature can have no application (Ill Rev Stats 1965, c 95½, § 121), and it is also provided that vehicles have a duty to drive on the right half of the roadway and that any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane available for traffic, or as close as practicable to the right-hand curb or edge of the roadway. (Ill Rev Stats 1965, c 95½, § 151.) From the testimony of Mike Motsinger, the jury might have inferred that Wesley Smith was in a place on the highway where he should have been just prior to the accident.

■ There was also in force at the time of this accident a statute which required that "the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle." (Ill Rev Stats 1965, c 95½, § 153(a).) This section has been held applicable in automobile-bicycle collision situations. Conway v. Tamborini, 68 Ill App2d 190, 215 NE 2d 303. The issues of defendant's intestate's negligence submitted to the jury included failure to pass to the left of minor plaintiff at a safe distance, failure to

386

maintain a proper lookout, failure to drive at a reasonable and proper speed.

■■ There was testimony in this case that plaintiff was on the side of the road where he was supposed to be at the time he was falling from the bicycle, 30 to 35 feet west of Olive Street, and that the truck was just six to ten feet ahead of him at that time. From this the jury could have inferred that the defendant's intestate's truck had just struck the minor plaintiff when the minor was in a place on the highway where he was legally supposed to be. There was also testimony and the photographs show that one driving in a westerly direction on California Street approaching the place of the accident would have a clear and unobstructed view. From this, the jury could have concluded that the defendant's intestate negligently failed to pass to the left of the minor plaintiff at a safe distance in violation of Ill Rev Stats 1965, c 95½, § 153(a), or that he negligently failed to maintain a proper lookout. Reasonable inferences may be drawn from undisputed or established facts, and all that can be reasonably required to establish controverted facts is that the evidence, whether direct or circumstantial, creates a less probability leading, on the whole, to a satisfactory conclusion. Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847; Town of Cicero v. Industrial Commission, 404 Ill 487, 89 NE2d 354; Devine v. Delano, 272 Ill 166, 111 NE 742.

■ Defendant also argues that plaintiffs are precluded from recovering damages because there is no evidence of due care on the part of Wesley Smith, ten years of age at the time of the accident. We find no merit to this contention. American Nat. Bank & Trust Co. of Chicago v. Pennsylvania R. Co., 52 Ill App2d 406, 202 NE2d 79, affd, 35 Ill2d 145, 219 NE2d 529; Strasma v. Lemke, 111 Ill App2d 377, 250 NE2d 305.

■■■■■■■■■■
■■■■■

For the foregoing reasons the judgment of the Circuit Court of Madison County is affirmed.

Judgment affirmed.

EBERSPACHER and GOLDENHERSH, JJ., concur.