RICHARD S. RALPH, d/b/a RICHARD S. RALPH & ASSOCIATES, Plaintiff-Appellee, *v.* KARR MANUFACTURING Co., Defendant-Appellant.

(No. 59211;

First District (5th Division)—June 7, 1974.

*Rehearing denied July 25, 1974.*

Victor G. Savikas, of Friedman & Koven, of Chicago, for appellant.

James D. Griffith and David H. Pauker, of Pauker & Griffith, Ltd., of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant appeals from a verdict and a judgment entered thereon in plaintiff's favor for commissions owed pursuant to the terms of a sales and marketing agreement.

Defendant is a manufacturer of metal stampings and plaintiff was a marketing and management consultant. On February 17, 1967, the parties entered into an agreement entitled, "Sales Management and Marketing Consultant Agreement" ("agreement"), which contemplated that plaintiff, using his best efforts, was to manage and increase defendant's sales program by and through the retention of a sales force comprised of manufacturers' representatives. As consideration for this effort, plaintiff was to receive a $100 monthly retainer for 3 years and a 3 percent commission on defendant's sales to non-house accounts. The term of the agreement was to run until January 31, 1970.

On February 28, 1969, plaintiff was dismissed by defendant and thereafter filed this suit to recover unpaid monthly retainers and past and future commissions as provided for in the agreement. Specifically, plaintiff sought to recover the monthly retainers from November, 1968, through January, 1970, $2,700; commissions for the period from November, 1968 through February, 1969, $6,390 and 3 percent of what the sales would have been for the period February, 1969 through January, 1971.

At trial, the following testimony was adduced. Plaintiff testified that

after the formation of the agreement, he undertook to fulfill his duties (as provided for in the agreement) in the following manner: He established and cooordinated a sales force of independent manufacturers' representatives; he assisted in the preparation of a brochure advertising defendant's services; he instituted a sales control program comprised of several component parts; he conducted what he termed to be "marketing surveys" and established a multi-tier quotation system. In addition, he introduced a stipulation entered into between the parties which reflected that the total sales of defendant, exclusive of house accounts, from December, 1968, through November, 1969, were $626,677.11; from December, 1969, through January, 1970, were $117,461.64; and from February, 1970, through January, 1971, were $1,167,320.33.

Plaintiff called Stan Karr, president of defendant company, under section 60, and elicited that prior to the formation date of the agreement, defendant did no business with Honeywell and Mallory, who later became defendant's biggest customers. Karr could not recall whether Honeywill and Mallory became and continued to be defendant's customers through plaintiff or his sales force's efforts.

In his section 60 examination, plaintiff testified that three-quarters of the representatives hired by him did not bring in a single sale and further, that he had performed no services for Honeywell and, after one meeting in April, 1969, he had no contact with Mallory. Sales to those two companies generated 90 percent of his commissions.

Steven Murray, director of engineering for Mallory, testified on behalf of defendant that he was involved with every Mallory order sent to defendant from February, 1967, through February, 1969, and that the decision to place orders with defendant was not the result of plaintiff's efforts. However, on cross-examination, Murray acknowledged that plaintiff's representative met with him prior to any orders being placed with defendant. In addition, he admitted that he had no knowledge of whether plaintiff's representative had contact with the other employees in Mallory's purchasing department.

Michael Ondoe, supervisor of buyers for Honeywell, testified on defendant's behalf and stated that he never had any contact with plaintiff or any of his representatives and that all of his dealings with defendant were through Stan Karr. On cross-examination, Ondoe admitted the authenticity of an order from Honeywell through plaintiff's representative prior to any order Ondoe placed directly with Karr.

The jury returned a verdict for $66,284.84. Defendant appeals from this verdict and the judgment entered thereon.

OPINION

Defendant first contends that plaintiff did not sustain his burden of proof in establishing that defendant's sales increased as the result of his

efforts. To sustain this contention, defendant points to section 2 of the agreement, which provides in part that plaintiff shall "put forth his best efforts and to diligently provide the management of Karr's sales and marketing program and with such efforts to increase Karr's sales * * *." Defendant argues that plaintiff was required to but failed to establish that the increase in defendant's sales were a direct result of his efforts.

Plaintiff, contrariwise, argues that in conformance with the provisions of the agreement, he formed a sales organization comprised of manufacturer's representatives, established certain procedures which facilitated the operation of this sales organization, and, in general, performed those functions necessary to the promotion and growth of defendant. Testimony relating to the fulfillment of these tasks, as well as figures representing an appreciable increase in the sales of defendant, were introduced at trial as representative of plaintiff's compliance with the agreements provisions.[1]

---

[1] "2. *Best Efforts.* RALPH agrees to exert and put forth his best efforts and to diligently provide the management of KARR'S sales and marketing programs and with such efforts to increase KARR'S sales by means of recruiting an adequate and qualified sales organization composed of independent exclusive representatives who will effectively and diligently devote themselves to the promotion and sale of metal stampings manufactured by KARR. In the course of performing such duties and responsibilities, RALPH shall consult with KARR on all sales management and marketing problems and in the formulation and administration of Company's policies dealing with matters of sales promotion and marketing.

3. *Ralph's Duties.* RALPH'S functions, duties and responsibilities shall include the following:

(a) To create markets and to develop sales representation for the promotion and sale of KARR'S metal stamping services.

(b) To recruit a complement of independent exclusive manufacturers' representatives sufficient to properly promote the sale of KARR'S metal stamping services throughout the United States.

(c) To conduct sales seminars and meetings with the independent sales representatives and to assist such individuals in the performance of their duties and responsibilities as sales representatives of KARR.

(d) To prepare marketing surveys and make studies and analyses necessary to determine the most suitable manner in which the metal stamping products and services of KARR can best be presented to customers and prospective customers.

(e) To develop, institute and maintain a sales control system which will provide KARR with current information on the activities of the independent sales representatives.

(f) To confer with KARR and develop programs for future sales and promotional activities.

(g) To recruit and enter into formal agreements with independent sales representatives in various areas throughout the United States in which KARR'S metal stamping services will be offered.

(h) To perform such other and further duties as may be reasonably required to effectively accomplish the primary duties as hereinabove described."

Consequently, the question to have been resolved by the jury was whether plaintiff performed sufficiently so that he met the conditions of the agreement and thereby established his right to the compensation provided for therein. Plaintiff argues that in order to establish performance of the conditions requiring his "best efforts", he had to and did prove that he diligently directed his efforts on defendant's behalf. Defendant, however, maintains that mere proof of plaintiff's best efforts did not establish compliance with this condition; rather, plaintiff had the additional burden of establishing that he "increased" the sales of defendant and, in the absence of any causal relationship between effort and result, plaintiff was not entitled to recover. The jury was instructed on plaintiff's theory of his burden of proof and found that plaintiff had performed his condition precedent to the agreement.

■■ The express language of the agreement, when read in its entirety, provides for a diligent effort on plaintiff's part to increase the sales of defendant. It does not, despite defendant's interpretation, require that the sales of defendant *had* to increase. It appears, therefore, that there was no requirement that there be an increase in sales solely from his efforts. In addition, we note that the portion of section 2 of the agreement, set forth above, cited by defendant as determinative of the issue of plaintiff's responsibility, continues with the following: "and with such efforts to increase KARR'S sales *by means of* recruiting an adequate and qualified sales organization  *  *  *." (All of section 2 appears in footnote 1.) When considered with the section entitled *"Ralph's Duties"* (footnote 1), which delineates the scope of plaintiff's responsibilities, we believe that all plaintiff was required to establish was his performance vis-a-vis the agreement's terms. Accordingly, after reviewing the record, we are of the opinion that there was sufficient evidence offered by plaintiff of the performance of his contractual duties to allow the question of satisfactory performance to go to the jury.

■■■ Plaintiff is required to plead and prove that he performed all the conditions precedent to the contract before he can recover. (Ill. Rev. Stat. 1973, ch. 110A, par. 133(c); *Liberty Export & Import Corp. v. Swift & Co.*, 231 Ill.App. 1, 25.) However, whether a contract has been performed according to its terms is ordinarily an issue of fact to be decided by the jury. (*Pescaglia v. Gianessi*, 9 Ill.App.3d 582, 585, 295 N.E.2d 148.) This issue was resolved in favor of the plaintiff, and it is not the function of this court to re-determine questions of fact submitted to and decided by the jury unless the findings of fact are against the manifest weight of the evidence or the verdict is unsupported by any evidence whatsoever. (*Dorweiler v. Gleim*, 8 Ill.App.3d 190, 195, 289 N.E.2d 471.)

In addition, we note that reasonable inferences may be drawn from undisputed or established facts and all that can be reasonably required to establish controverted facts is that the evidence, whether direct or circumstantial, creates a lesser probability leading on the whole to a satisfactory conclusion. (*Smith v. Stopher*, 125 Ill.App.2d 378, 387, 261 N.E.2d 16.) Here, the jury found that plaintiff performed the conditions precedent to the agreement and, under the instructions given it, we cannot say that its finding was against the manifest weight of the evidence.

This brings us to defendant's next contention that the court erred in refusing to instruct the jury as to his theory of plaintiff's burden of proof. Specifically, defendant cites the court's refusal to give his instruction 8B, which defendant claims contained the following essential language not contained in the burden of proof instruction given by the court at the request of plaintiff:

> "Plaintiff has the burden of proving each of the following propositions:
>
> \* \* \*
>
> Second, that the sales of defendant were increased by reason of plaintiff's efforts."

As hereinbefore noted, it is our opinion that plaintiff had to establish that he put forth his best efforts on defendant's behalf and he was not required to show the sales of defendant *had* to increase before compliance with the agreement was had. Therefore, it follows that the court acted properly in refusing to tender defendant's instruction as to this point. Moreover, we believe that instruction 5, given at the request of the plaintiff, accurately reflected the burden of proof placed on him. That instruction recited, almost verbatim, the crucial language of the agreement:

> "Among his duties Ralph S. Richard was required to use his best efforts to manage Karr Manufacturing Co.'s sales and marketing programs and to increase the company's sales by recruiting an adequate and qualified sales organization composed of independent [*sic*] representations."

■■ In addition, the court's instructions 8A and 8C [2] sufficiently ap-

---

[2] "Court's Jury Instruction No. 8A

3) 'If you find that the Defendant has failed to pay the Plaintiff the $100.00 monthly retainer specified in the contract and that Plaintiff put forth his best efforts to increase sales on behalf of Defendant corporation, you may find in favor of the Plaintiff for this monthly sum, but not for any period extending beyond:

a. February 28, 1969, if you find that the Plaintiff has committed a material breach of the contract, or

prised the jury of what plaintiff was required to prove and, in view thereof, we find no error was committed in refusing to give defendant's instruction 8B.

Defendant also contends that plaintiff was not entitled to commissions after his dismissal because he failed to show that he was the procuring cause of sales made subsequent thereto.

Section 7 of the agreement provides:

> "7. *Compensation After Termination.* Upon termination of this Agreement, however occurring (including the death of RALPH), KARR shall, for and during the one (1) year period immediately following the date of termination, pay RALPH or his legal representative, as the case may require, three per cent (3%) commission on sales made during such year to which this Agreement is applicable."

We think that the agreement provides that plaintiff does not have to be the procuring cause of subsequent sales, because (1) section 7 provides that payments for 1 year were to be vested upon termination even if plaintiff died (in which event no additional sales could be attributable to him); and, of more significance, (2) section 6 provides that "RALPH shall receive a commission of three per cent (3%) of the net selling price * * * on all sales made by KARR during the term of this Agreement * * *." Thus, by the express terms of the agreement, plaintiff is entitled to commission on sales governed by the provisions of the agreement, which exclude only house and tooling accounts in existence at the time of the agreements formation.

■■ The cases cited by defendant to support his theory are inapplicable in the face of express contractual provisions controlling this issue. As stated in *Walgreen Co. v. American National Bank & Trust Co.,* 4 Ill.App.3d 549, 554, 281 N.E.2d 462:

> "The principal function of a court in construing a written agreement is to discern and to give effect to the intention of the parties as expressed in the language of the document when read as a whole. [Citation.] A court cannot remake a contract and give a litigant a better bargain that he himself was satisfied to make; and when the terms of a contract are clear and unambiguous, they must be enforced. [Citations.]"

---

b. January 31, 1970, if you find that the Plaintiff has not committed a material breach of the contract.'

Court's Jury Instruction No. 8C

'Plaintiff has the burden of proving each of the following propositions:

'First, that the plaintiff duly performed all conditions required on his part to be performed under the terms of the contract betwen the parties.

'Second, that plaintiff used his best efforts to increase defendant's sales.' "

It appears to us that section 7 of the agreement does not, as defendant contends, provide that plaintiff must show he was the procuring cause of sales made subsequent to his dismissal in order to allow him to recover commissions. Accordingly, we believe plaintiff is entitled to commissions for 1 year from the date of his termination on all sales made after that date and which are not specifically excluded by the terms of the agreement.

With regard to this point, it was plaintiff's position at trial, and the court instructed the jury at the request of plaintiff, that he was entitled to commission on sales made up to January 31, 1971, 1 year from the expiration date of the agreement, and not just to February 27, 1970, 1 year from the date of his termination. In order to buttress this position, plaintiff points to section 19[3] of the agreement and claims that when it is read in conjunction with section 7, heretofore noted, there is ample support to show that he is entitled to commission up to the expiration date as well as 1 year thereafter. We cannot agree with this construction of the agreement.

■■ It is our opinion that section 7 is controlling on the question of continued commissions in the event of termination by defendant. Section 19 deals with the duration and the renewal provisions of the agreement, and we think it is specifically limited so that it will be operative only in the absence of termination prior to the date of expiration ("unless terminated sooner by reason of a material breach"). Here, the defendant, by preventing plaintiff from performing under the agreement, materially breached the agreement, and we must therefore turn to the provision dealing with termination and compensation in the form of continued commissions. Section 7 contemplates this situation and by its express terms allows for continued commissions for 1 year from the date of termination, no matter how the termination occurs. Therefore, the date of termination being February 28, 1969, we believe the court erred in allowing evidence and in instructing the jury on sales made by defendant after February 27, 1970.

■■ In view of this determination, defendant's contention that plaintiff's computation of damages was speculative and based on conjecture is no longer an issue here. We agree that an approximation of defendant's

---

[3] "19. *Duration.* This Agreement shall be effective as of the date hereof and unless terminated sooner by reason of a material breach or mutual agreement of the parties shall continue in force and effect to and including January 31, 1970, and shall automatically renew itself from year to year thereafter unless either party shall given written notice to the other of an intention to cancel this Agreement not less than thirty (30) days prior to January 31, 1970, or January 31 of any subsequent year during which this Agreement is in force and effect."

sales (when actual sales figures were available) for a period of time after termination based on an "increase factor" which was predicated on past performance is unacceptable and unreliable.

Where damages are susceptible to proof in dollars and cents, direct and tangible proof must be offered. *Leon v. Thorlief Larsen & Son, Inc.,* 133 Ill.App.2d 911, 913, 272 N.E.2d 799.

Finally, as to commissions earned for sales made to Western Electric, we believe that plaintiff is entitled to 3 percent commission on all net invoiced sales and not on the purchase order prices introduced at trial.

For the reasons stated, the resolution of the measure of plaintiff's damages must be remanded for a determination based upon defendant's sales figures from the period February 28, 1969, to February 27, 1970, plus any arrearages owed to plaintiff as the result of sales prior to February 28, 1969.

Accordingly, we affirm the findings of the trial court as to defendant's liability for the breach of the agreement and remand for the determination of damages not inconsistent with this opinion.

Affirmed in part.

Reversed in part.

DRUCKER and LORENZ, JJ., concur.