Thornton B. Stearns and Diane C. Stearns, His Wife, Plaintiffs-Appellants, v. Clara Western and Cedric Western, Her Husband, Defendants-Appellees.

Gen. No. M–51,246.

First District, Third Division.

October 13, 1967.

465

Joseph L. Mack, of Chicago (Richard F. McPartlin, of counsel), for appellants.

William D. Ambrose, of Chicago, for appellees.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Plaintiffs appeal from a judgment entered in favor of the defendants in an action to recover an earnest money deposit of $1,000 made by the plaintiffs with the defendants under a contract for the purchase of real estate. The case was tried before the court without a jury. The facts are these.

On September 12, 1964, plaintiffs and defendants entered into a written contract whereby the plaintiffs agreed to purchase from the defendants, property located at 1814 Main Street, Evanston, Illinois, for the price of $21,500. A deposit of $1,000 was given by plaintiffs to defendants, pursuant to the contract. The contract was partly handwritten and partly printed, and was labeled "Offer to Buy Real Estate." The Offer to Buy Real Estate provided in part as follows:

"Cash to be paid on closing of deal $20,500.00

"Balance to be paid as follows: $3,500.00 cash, and balance from proceeds of 1st mtge. to be obtained by purchaser."

In longhand the contract contained the following:

"This contract is subject to purchaser or seller to obtain a 1st mtge. loan in the amount of $17,000 at interest rate not to exceed 5¾% for a period not less than 20 years. If such loan cannot be obtained within 10 days from date hereof the earnest money is to be returned to the purchaser and this contract will be null and void."

In the printed portion of the Offer to Buy Real Estate there appeared the following sentence:

"But if the undersigned defaults in this contract, the deposit is at your option to be forfeited, as liquidated damages, first paying the real estate broker's commission and expenses incurred, and rendering the balance to you, and the contract shall become null and void."

No real estate broker was involved in this transaction. Clara Western held title and was the wife of Cedric Western. The plaintiff, Thornton Stearns, was advised by Cedric Western of an existing mortgage on the property held by the First Federal Savings and Loan Association of Wilmette, and that that association had appraised it for maximum mortgage purposes. Thornton Stearns, the plaintiff, contacted the First Federal Savings and Loan Association of Wilmette two days after the signing of the contract and sought a $17,000 mortgage at the rate of 5¾% for 20 years. This application was rejected by that savings and loan association. Mr. Stearns then made a written application to the Bell Savings and Loan Association for a $17,000 mortgage loan on the property,

but that association, likewise, rejected the application. Cedric Western then advised Thornton Stearns to try First National Bank and Trust Company of Evanston. Application was made at that bank by Stearns and the loan was refused. Stearns then called the defendant, Cedric Western, on the Friday following the date of the contract and advised him that he (Stearns) had been turned down three times and was unable to get the mortgage funds. On September 22, 1964, being ten days after the execution of the agreement, Stearns wrote a letter to the defendants advising them that the plaintiffs were unable to obtain a $17,000 mortgage loan and that the contract was, by its terms, null and void. He also advised the defendants they were at liberty to deal with anyone else and requested the return of the earnest money deposited. At approximately 1:00 p. m. on September 22, 1964, after the plaintiff Stearns had mailed the above letter requesting the return of the deposit money, the defendant, Cedric Western, delivered to Mr. Stearns the following letter:

"5710 N. Western Ave.,
Chicago 45, Illinois.

September 21, 1964

Mr. Thornton B. Stearns,
7731 N. Marshfield,
Chicago 26, Illinois.

Dear Mr. Stearns:
Property: 1814 Main Street, Evanston, Illinois.

I hereby offer you a mortgage loan on the following terms:

1. Amount: $17,000.00.
2. Interest rate: 5¾% (five and three-quarters percent).

3. Terms: 20 years.
4. Principal and interest: $119.36.
5. Prepayment privilege: 5% penalty on sum paid in excess of normal principal installments during first five years: 2% penalty on sum paid in excess of normal principal installments thereafter.
6. $40.00 to be deposited with monthly mortgage payment for real estate taxes.
7. Hazard insurance policy for at least $17,000.00 for fire and wind storm damage will be required at time of closing with a mortgage clause to Cedric Western.
8. Subject to a closing cost of 1%.

This commitment will remain outstanding for a period of ten days from this date.

> Yours faithfully,
> /s/ CEDRIC WESTERN,
> CEDRIC WESTERN."

Stearns told Western that the offer of a mortgage as set forth in the foregoing letter was unacceptable. On September 23, 1964, the defendant, Clara Western, mailed a letter to Mr. Stearns offering to deliver to him a Torrens Certificate for the property and to complete the remaining obligations imposed upon her under the agreement, and requesting specific performance of the agreement. Thereafter, on October 2, 1964, Clara Western addressed another letter to Mr. Stearns, stating, in part, the following: "I have elected to consider your deposit of $1,000.00 to be forfeited as liquidated damages due to your default."

The record discloses that on October 19, 1964, the defendants executed a Deed of Sale to the premises involved to another party. Affixed to that deed was $24.20 in Revenue Stamps, indicating a sale price of $22,000. However, Mr. Western testified he did not remember

exactly how much was received for the sale of the property.

The defendant, Cedric Western, testified that on the Monday prior to the expiration of the ten-day period, Mr. Stearns advised him that he could only get a $16,400 mortgage; that Stearns asked Western if he knew Negroes were within $3\frac{1}{2}$ blocks of the property, and that he didn't want the house at any price.

Mr. Stearns admitted that at one time he stated he would not purchase the property because of Negroes living in the neighborhood. This statement, however, was made after he was rejected by three mortgage houses. Mr. Stearns also testified that when he was asked by Mr. Western if he would comply with the contract he stated he would if he could obtain financing, even though it necessitated putting the property back on the market the following day.

The plaintiffs contend, (1) since the mortgage loan was not obtained, pursuant to the provisions of the contract, the contract became void and unenforceable, and plaintiffs are therefore entitled to a refund of their earnest money, and (2) defendants having elected to require specific performance of the contract with the plaintiffs, are estopped to inconsistently elect to retain the earnest money as liquidated damages.

The offer made by the plaintiffs and accepted by the defendants expressly provided that the sale of the premises was subject to the condition that a mortgage loan in the amount of $17,000 at an interest rate of not to exceed $5\frac{3}{4}\%$, for a period of not less than 20 years, be obtained within ten days from the date of the contract, otherwise the earnest money was to be returned to the purchaser. The sale price under the agreement was $21,500. A $1,000 deposit was made with the balance of $20,500 to be paid in cash at the time of closing. $3,500 of the cash was to be paid by the purchaser and the

remaining $17,000 to be paid from the proceeds of the first mortgage to be obtained by purchaser.

Under the agreement between the parties there can be no doubt that the financing of the sale was to be obtained from an outside mortgage house, and it was not contemplated that a purchase money mortgage would be given.

In Garlete v. Rodriguez (La), 126 So2d 182 (1961), a purchaser had agreed to buy the property subject to his ability to obtain a loan from a homestead building and loan association, because he wanted the benefit of their appraisal, and other benefits. The court on page 184 said the following:

> "Any one having experience with the purpose and operation of such associations knows full well that they are organized to promote thrift and home-owning; are very paternalistic in seeing that real estate taxes and insurance premiums are paid, and less harsh in defaulting their borrowers than private lenders. Furthermore, such associations usually retain their vendor's lien and mortgages for the full period, while private lenders often find it convenient to dispose of the mortgage and possibly submit the borrower to the whim or caprice of an unexpected and unwanted creditor."

In this case the defendant Western, in making his proposal of a mortgage loan, did not conform to the terms of the contract. His proposal of September 21, 1964, contained eight conditions. The first three, being the amount $17,000, the interest rate of $5\frac{3}{4}\%$, and the term 20 years, only conformed to the contract. The five additional conditions were the following:

"4. Principal and interest: $119.36.
"5. Prepayment privilege: 5% penalty on sum paid in excess of normal principal instalments during first five years; 2% penalty on sum paid in excess of normal principal instalments thereafter.

471

■

"6. $40.00 to be deposited with monthly mortgage payment for real estate taxes.

"7. Hazard insurance policy for at least $17,000.-00 for fire and wind storm damage will be required at time of closing with a mortgage clause to Cedric Western.

"8. Subject to a closing cost of 1%.
This commitment will remain outstanding for a period of ten days from this date."

■ The offer of defendants to make a mortgage, which would be a purchase money mortgage, was contrary to the provisions of the contract, which provided for a cash payment at the time of the closing. This cash payment was to be made by the purchasers partially from a mortgage of $17,000 to be obtained, and the balance to be supplied by the purchasers.

■ There is nothing in the record to indicate that the sellers would be acceptable as the owners of a mortgage on the property to be acquired by the purchasers. In addition to this, the sellers would not be receiving cash for $17,000 of the purchase price as the contract provided. The additional conditions set forth in the counteroffer made by the defendant Western were not shown to be matters of custom and usage. The existence of custom and usage must be proved as any other matter of fact. Katz v. Brooks, 65 Ill App2d 155, 212 NE2d 508. The plaintiff, on the other hand, testified that many loans are not amortized, and that the principal becomes due on a fixed date; that savings and loan associations do not generally charge a penalty clause for prepayment; that a monthly deposit for real estate taxes varies from one mortgage house to another, and that Evanston Trust and Savings Bank charges no closing cost.

■ The foregoing uncontradicted evidence therefore showed that the conditions imposed by the counteroffer of the sellers were not matters of trade custom or usage.

In Morris v. Goldthorp, 390 Ill 186, 60 NE2d 857, the owner of real estate had agreed to give to Morris what was described as an exclusive sale of certain real estate, together with the privilege extended to Morris of purchasing the property if he so desired. The option contained no provision as to the character of the deed by which the property was to be conveyed. Morris thereafter wrote to the owners to the effect that he had decided to exercise his option to purchase, and sent a warranty deed inserting the name of a nominee as grantee, which warranty deed was to be acknowledged before a notary public. The court on page 194 said:

> "Appellees further contend that the offer contained in the option was not accepted by appellant in accordance with its terms. As already indicated, the option constituted an offer for the sale of the property upon the terms therein prescribed. Nothing is said in the option as to the character of the deed by which the property is to be conveyed. That being true, the option, if properly accepted, entitled the purchaser to a conveyance which would vest in him unincumbered fee-simple title, except in so far as a less estate was specified in the option. (Cases cited.) In order to convey fee-simple title, it is not necessary that the conveyance be by warranty deed. A quitclaim deed is equally as effectual to pass title as a warranty deed with full covenants."

The court continued on page 195:

> "It is elementary that where one party gives an option to another, the acceptance, to be valid so as to conclude an agreement or contract between the parties, must, in every respect, meet and correspond with the offer, neither falling short of, nor going beyond, the terms proposed, but exactly meeting

them at all points and closing with them just as they stand. (Cases cited.)"

The case of Department of Public Works and Buildings v. Halls, 35 Ill2d 283, 220 NE2d 167, involved the question of whether the lessee of a parcel of land properly exercised an option to purchase the leased premises. Under the terms of the lease the lessee was given the right and option to purchase the premises for the sum of $25,000 at any time during the term. In an effort to exercise the option the lessee notified the owner that he had elected to exercise the option, and also that the abstract should be submitted to his attorney for examination, and that the purchase price would be available upon the furnishing of a merchantable abstract of title and warranty deed. There was no reference in the option to an abstract of title or a warranty deed. The court on page 285 said:

"The purported acceptance of the option concluded with the statement: 'The abstract should be submitted to my attorney, (naming him), for examination, and the purchase price will be available *upon the furnishing of a merchantable abstract of title and warranty deed.*' (Emphasis added.) This language indicates a clear intent which is that the purchase price would be paid when an abstract showing merchantable title and a warranty deed were delivered. There was not the slightest indication in the option of an agreement to do any of these things, and there was no obligation on the lessor to do them unless he specifically agreed to. The so-called acceptance was not in accord with the offer—it was not unequivocal—it added entirely new conditions, and it constituted a counteroffer requiring acceptance by the lessor before any contract came into being. Since it was not so accepted, there never was an effective exercise of the option."

474

The defendants contend that a contract must be construed most strongly against the party who prepared the contract where the words are ambiguous or of doubtful construction, and that where possible a contract will be construed so it will uphold its validity. In support of this argument the defendants state that the blank spaces on the printed form of Offer to Buy Real Estate were filled in by one of the plaintiffs, Thornton B. Stearns; that Mr. Stearns was in the real estate business and had been for years; that he had a great deal of experience in the preparation and handling of real estate contracts, while the defendants had been involved in only one previous real estate transaction. There was no attorney present representing either party at the time the contract was drawn up.

Defendants cite authority for the proposition that where words in a contract are ambiguous or of doubtful construction, they are to be construed most strongly against the party who prepared the contract, for the reason that he chose the language. The defendants, however, fail to point out any words in the contract before us which are ambiguous or of doubtful construction. The defendants also cite authority for the proposition that contracts must be construed to give effect to the intention of the parties as expressed in the agreement, and to this end the contract shall be construed as a whole, giving effect to every portion of the instrument and preferring the construction which renders the agreement legal rather than void. As we understand this case, the plaintiffs do not contend for a construction of the contract which would render it void. It is plaintiffs' contention that the clear language expressed in the agreement was not complied with by the defendants.

Defendants also argue that the real reason that the plaintiffs refused to go ahead with this contract was that Mr. Stearns found out that there were Negroes

475

3½ blocks from the property in question. This contention is not borne out by the record. Mr. Stearns testified that he would have gone through with the contract if he had been able to get a mortgage pursuant to the terms of the contract, even though he might have placed the property on the market the next day. Furthermore, the feelings of Mr. Stearns regarding the residence of Negroes in the neighborhood are completely unimportant in the determination of the issues in this case.

■ Mr. Stearns was unable to get a mortgage from three different lending institutions, and the offer of a mortgage made by the defendants was a counterproposal which was not accepted by the plaintiffs because that counterproposal contained conditions other than those set forth in the Offer to Buy Real Estate. The defendants were in no position to bind the plaintiffs by making a counteroffer which did not comply with the original contract. Indeed, the counterproposal of the defendants read in part as follows: "I hereby offer you a mortgage loan on the following terms: . . . This commitment will remain outstanding for a period of ten days from this date." The defendants knew from the very wording of their counteroffer that it was in conformity with the contract, for if it were, it would have been unnecessary to consider it as an offer which would have to be accepted, nor would it be necessary to have that offer remain outstanding for a period of ten days if it was in compliance with the original contract.

■ Since we conclude that the terms of the contract were not met by the defendants we deem it unnecessary to consider the other point raised by the plaintiffs. The judgment of the trial court is reversed and the cause is remanded to the trial court with directions to the trial court to enter judgment for the plaintiffs in the sum of $1,000.

Reversed and remanded with directions.

SCHWARTZ and DEMPSEY, JJ., concur.