SARAH DODSON, Plaintiff-Appellee, *v.* JOHN NINK, d/b/a John Nink Realty, *et al.*, Defendants-Appellants.

Second District No. 78-351

Opinion filed May 18, 1979.

Philip H. Nye, Jr., of Fearer & Nye, of Rochelle, for appellants.

O'Neil & Willis, Ltd., of Rochelle, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

This action was brought in the Circuit Court of Ogle County by plaintiff Sarah Dodson to recover a $3,000 earnest money deposit held in escrow by defendant John Nink, a real estate broker, pursuant to a contract for sale of real estate owned by defendants Thomas and Nancy Chaplin. After a bench trial, the circuit court entered an order permitting

plaintiff to recover the $3,000 earnest money deposit in its entirety, ruling that a condition precedent contained in the contract never occurred and that the contract was not enforceable. Defendants have appealed. The primary issue presented for review is whether the trial court erred in failing to find that plaintiff had defaulted on the sales agreement.

After examining the record and considering the arguments presented by the parties, we are of the opinion that the judgment of the circuit court should be affirmed.

The salient facts are essentially uncontroverted. Plaintiff contracted to purchase real estate from defendants Thomas and Nancy Chaplin for $34,900. Pursuant to the terms of this agreement (hereinafter, the "Chaplin contract"), plaintiff deposited $3,000 in earnest money with John Nink, the broker who arranged the sale of the Chaplin property. The contract, however, was expressly conditioned upon the "ability" of plaintiff to complete the sale of her own house located at 224 Jeffrey in Rochelle, Illinois, for not less than $28,000 or for such amount that would be acceptable to her within 90 days of the contract.

Approximately two weeks later, plaintiff found prospective purchasers for her property through her own brokers and entered into a contract to sell her Jeffrey Avenue home for $28,000 with Michael and Jacquelyn Morrison. This sales contract ("the Morrison contract") stated in part as follows:

"This offer is contingent upon the ability of buyer to:

(a) Obtain VA (Veteran's Administration) mortgage loan of not less the $28,000 due in not less that 30 years with interest at not more than 8½% and with a firm commitment to be obtained by or for Buyer or this contingency removed within 90 days of the acceptance of this offer. Seller shall not be required to incur additional expense by reason of FHA or VA inspections unless otherwise provided herein. Loan discount, if any, to be paid by Seller not to exceed 2%. Buyer shall make all efforts that are reasonably possible to obtain said loan."

In addition to these terms, both the Chaplin contract and the Morrison contract specified that "[i]f any contingency cannot be carried out, this offer shall become void and all money paid or obligations given by Buyer shall be returned to him."

The Morrisons later secured a letter of commitment from the Veterans' Administration for a mortgage loan in the amount specified in the contract. However, the VA required that certain repairs to the house be completed as a prerequisite to the issuance of the loan itself. Although the repairs were not major, they were apparently quite numerous. These included, *inter alia*, the replacing of rotted flooring in the kitchen and

bath, painting the garage, repairing the gutters and downspouts, and fixing screens in the basement. The statement of reasonable value furnished by the VA specifically provided that "persons buying previously occupied homes must look to the sellers to correct any defects." Hence, the VA would not loan the mortgage money unless the required repairs were first completed, and the burden of making these repairs rested with plaintiff under the terms of the VA commitment.

Plaintiff refused to have her house repaired. Her reason for refusing to do so was the subject of considerable conflicting testimony at trial, and eventually developed into the main factual issue in the case. Plaintiff testified that she first learned of the VA repair requirement when the brokers participating in the sales, John Nink and Mary Lou Dickerson, told her that the house had to be repaired. Plaintiff said she was unwilling to undertake any repairs because she was told that they would be expensive, and at the time she did not have the money. In addition, the contract to sell her own house contained an express provision that the seller was not required to incur any additional expense as a result of an FHA or VA inspection. Plaintiff also expressed concern at the inconvenience to her if the house was repaired while she was still living there.

On the other hand, defendants characterized plaintiff's refusal to repair the house as arbitrary and unreasonable. Two of the brokers involved in the transactions, Mary Lou Dickerson and John Nink, both testified that they offered to assume the expense of the repairs, but said that plaintiff refused. According to Mrs. Dickerson, plaintiff responded to the offer by saying that nothing needed to be done to the property. Defendant Nink testified that he was familiar with the Dodson property, and that in his opinion only an afternoon was required for the necessary repairs. In reply to the broker's offer to assume the cost of the repairs, plaintiff testified that she had no assurances that they would do as they had claimed.

In any event, the house was never repaired. In a letter dated November 23, 1977, defendants demanded that plaintiff close the contract to purchase the Chaplin property or forfeit the $3,000 earnest money deposit. Defendants claimed in the letter that the contingency in this contract that plaintiff sell her own house was met when she entered into the contract with the Morrisons on September 16, 1977. Plaintiff took the position that this contingency did not occur. In a letter to defendant Nink, dated December 6, 1977, plaintiff's counsel stated:

> "As you are aware, she [plaintiff] did receive an offer to purchase the Jeffrey real estate, but this offer was contingent upon the ability of the buyer to obtain VA financing, and also provided that the

seller shall not be required to incur additional expense by reason of FHA or VA inspections.

As you know, the VA commitment was contingent upon certain repairs being made, and as such is not a firm and binding commitment, and it is our position that the contract to purchase real estate by the Morrisons was not completed on or before the closing date, and she is therefore entitled to the return of her earnest money."

As a consequence, neither the Chaplin contract nor the Morrison contract was closed. Plaintiff commenced the present lawsuit when the broker, John Nink, continued to refuse to return the earnest money deposit. After a brief trial, the circuit court entered judgment for plaintiff and defendants have appealed.

■■■ We now turn to a consideration of the issues raised by the instant appeal. Defendants' basic argument in this court is that the trial court erred in ordering them to return the $3,000 earnest money deposit because plaintiff was in default under the Chaplin sales contract. It has long been held, of course, that a purchaser of real estate cannot recover a down payment when in default and when the vendor is ready and able to comply with the terms of the contract. (*Baston v. Clifford* (1873), 68 Ill. 67, 70; *Glenn v. Price* (1949), 337 Ill. App. 637, 644, 86 N.E.2d 542, 545.) In the event of default by the buyer, a down payment or earnest money deposit may be retained in full by the vendor without reference to the amount of actual damages incurred as a result of the default. *Pruett v. La Salceda, Inc.* (1977), 45 Ill. App. 3d 243, 247, 359 N.E.2d 776, 779; *Linster v. Regan* (1969), 108 Ill. App. 2d 459, 248 N.E.2d 751.

In support of their argument that plaintiff defaulted on the Chaplin sales contract, defendants have taken three different, although consistent, positions. First, defendants argue that plaintiff was under a contractual obligation to employ "reasonable efforts" in the sale of her home, and that she failed to do so by refusing to repair or allow others to repair her house to complete the sale to the Morrisons. Secondly, defendants point out that the Chaplin contract was not contingent upon the actual sale of plaintiff's house, but rather upon plaintiff's "ability to sell" her Jeffrey Avenue home. Since plaintiff had the "ability to sell" by completing repairs required by the Veterans' Administration, the contract contingency was fulfilled and plaintiff was in default by refusing to close. Lastly, defendants contend that if the doctrine of equitable conversion is applied, it will have the effect of treating plaintiff as having complied with the contingency in the Chaplin contract.

■■ The proper resolution of these issues, we believe, rests firstly upon a determination of the extent to which the Morrison contract was

enforceable by the parties and secondly upon an analysis of plaintiff's contractual duties under the terms of the Chaplin contract. Initially, we note that both contracts were expressly contingent upon the occurrence of certain events. It is well established that where a contract contains a condition precedent, the contract does not become enforceable or effective until the condition is performed or the contingency occurs. (*Hodorowicz v. Szulc* (1958), 16 Ill. App. 2d 317, 320, 147 N.E.2d 887, 888.) Where the performance of the contingency or condition is within the control of a party to the agreement, the party for whose benefit the condition precedent runs is required to use "reasonable efforts" to have it occur. *Smith v. Vernon* (1972), 6 Ill. App. 3d 434, 438, 286 N.E.2d 99, 102; see generally Annot., 78 A.L.R.3d 880, 883-84 (1977).

■■■ It is first necessary to determine whether the Morrison contract was enforceable by the parties. As noted previously, the contract in which plaintiff agreed to sell her house to the Morrisons was made expressly contingent upon the buyers obtaining a Veterans' Administration mortgage loan for the balance of the purchase price. If this contingency in fact occurred and the contract then became enforceable, it is clear that plaintiff was in default under the contract as she had the "ability to sell" her home. Defendants state that the contract was enforceable because the Morrisons secured the requisite financing. We disagree. Although the Morrisons did receive a commitment from the Veterans' Administration for the loan, the actual issuance of the loan was conditioned by the VA upon the completion of repairs to plaintiff's home prior to closing. In effect, the VA required the seller (plaintiff) to correct any defects in the house. Under the circumstances, it is apparent that the financing obtained by the Morrisons did not match that specified in the contingency clause. It is well established that, in an executory contract, conditions which are either expressed or implied must be exactly fulfilled before liability can arise on the premises which the conditions qualify. (5 Williston, Contracts §675 (3d ed. 1961); J. Calamari & J. Perillo, Contracts §11—6 (2d ed. 1977); see *Stearns v. Western* (1967), 87 Ill. App. 2d 465, 232 N.E.2d 126.) The VA loan commitment secured by the Morrisons did not exactly comply with the contract specifications because it attempted to impose a duty upon plaintiff to repair her house, which was not part of the original sales agreement. The contingency in the Morrison contract, therefore, did not occur, and the contract was consequently unenforceable. See *Warinner v. Superior Court* (1974), 21 Ariz. App. 328, 519 P.2d 81.

● 7 The next inquiry is whether plaintiff was required under the terms of the Chaplin contract to repair her house and thus complete the sale of her home to the Morrisons who were unable to obtain a loan in accordance with their agreement. We conclude that she was not. Although defendants contend that plaintiff failed to employ "reasonable efforts" in refusing to

repair her house, we believe that the "reasonable effort" required of plaintiff was to obtain a buyer for her real estate, not to repair. Similarly, we believe that a prospective vendor has the "ability to sell" only upon obtaining a ready, willing, and financially able purchaser. In the instant case, plaintiff in fact found buyers for her home and entered into a contract with them; the deal failed to close because the purchasers were unable to obtain the requisite financing, not because of plaintiff's default. Plaintiff thus did not have the "ability to sell." In sum, we hold that plaintiff was not under a contractual obligation to repair her house to effect a sale.

Our holding merely gives effect to the agreement of the parties at the time the contract was entered into. When plaintiff contracted to purchase the Chaplin real estate, she impliedly agreed to use reasonable efforts to find a purchaser for her own house; she did not agree, however, to repair the house to complete a sale. In this respect, the offer by the brokers to assume the expense of the repairs is of no consequence. Since plaintiff was not required to repair her house, she was under no correlative duty, contractual or otherwise, to accept the brokers' offer to assume the expense of the repairs. We therefore conclude that the contingencies in both contracts did not occur, and that both contracts became void and unenforceable pursuant to their own terms. Plaintiff was thus entitled to the return of her earnest money.

■■■ Finally, defendants contend that applying the doctrine of equitable conversion will have the effect of treating plaintiff as having complied with the contingency of the Chaplin contract. This argument, however, is founded upon a misunderstanding of the doctrine and is quite clearly incorrect. As stated by our supreme court in *Shay v. Penrose* (1962), 25 Ill. 2d 447, 449, 185 N.E.2d 218, 219-20:

> "Equitable conversion is the treating of land as personalty and personalty as land under certain circumstances. Hence, as between the parties and those claiming through them, when the owner of land *enters into a valid and enforceable contract for its sale* he continues to hold the legal title, but in trust for the buyer; and the buyer becomes the equitable owner and holds the purchase money in trust for the seller." (Emphasis added.)

As noted above, a prerequisite to the application of the doctrine of equitable conversion is that the contract for the sale of land must be both valid and enforceable. (*Shay v. Penrose* (1962), 25 Ill. 2d 447, 450, 185 N.E.2d 218, 220.) The doctrine does not convert an otherwise unenforceable contract into one that is enforceable, as defendants argue; rather, it can only apply when the contract itself has become enforceable. Since we have previously concluded that the contingency in the Chaplin contract did not occur and that the contract was consequently unenforceable,

the doctrine of equitable conversion is of no relevance here. Defendants' last contention is wholly without merit.

The judgment of the Circuit Court of Ogle County is therefore affirmed.

Affirmed.

GUILD, P. J., and WOODWARD, J., concur.