GERALD HONKOMP et al., Plaintiffs and Counterdefendants-Appellees, v. DANIEL J. DIXON et al., Defendants and Counterplaintiffs-Appellants.

First District (2nd Division)    No. 80-1089

Opinion filed June 9, 1981.—Modified on denial of rehearing July 14, 1981.

Joel H. Greenburg, of Chicago, for appellants.

Beryl A. Birndorf, of Chicago, for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs Gerald Honkomp and Nellie Honkomp brought an action to recover a $5,000 earnest money deposit. The money had been deposited with an escrowee, Gerald Murphy, under an agreement to purchase a residential property from defendants, Daniel J. Dixon and Linda C. Dixon. The real estate contract executed by the parties on May 3, 1979, provided:

> "This contract is *subject to the purchaser* (or broker on purchaser's behalf) *obtaining* within 60 days *a mortgage commitment* in the amount of $49,000.00 or such lesser sum as purchaser accepts

amortized by monthly payments over a period of not less than 29 years at an interest rate not to exceed 8.1 per annum, for which purchaser shall make application within 10 days from date hereof * * * . *If, after making every reasonable effort*, Purchaser is unable to procure such commitment within the time specified herein and so notified Seller thereof within that time, this contract shall become null and void and all earnest money shall be returned to Purchaser; provided that if Seller, at his option, within a like period of time following Purchaser's notice, procures for Purchaser such a commitment or notifies Purchaser that Seller will accept a purchase money mortgage upon the same terms, this contract shall remain in full force and effect." (Emphasis added.)

Buyers applied for a mortgage loan commitment on May 8, 1979, at Alliance Savings and Loan Association. Alliance extended an offer to finance $45,200 at an interest rate of 8.125%. This proposal contrasted with the mortgage provisions in the real estate sale contract which specified $49,000 at 8.1%. An affidavit of Sellers' attorney specifies that: "[O]n June 26, 1979, Gerald Honkomp telephoned me at my office, notifying me that as of that date the Honkomps were terminating the May 3, 1979 agreement between Honkomps (Buyers) and Dixons (Sellers), because the Honkomps no longer wanted the house under any circumstances."

A letter, also dated June 26, from Sellers' attorney to the Buyers, extended Sellers' offer to finance the difference between the amount specified in the contract ($49,000) and the amount that Alliance was willing to finance ($45,200). The letter specified that Sellers were offering to accept a purchase money mortgage in the amount of $3,800 to complete the financing on the house.

A letter from Buyers' attorney to Sellers' attorney was also attached to the pleadings. This letter, dated July 11, 1979 (approximately 9 days after the expiration of Buyers' 60-day period but roughly 51 days before the expiration of Sellers' "like period of time following Purchaser's notice"), informed Sellers' attorney that the Buyers were unable to obtain a mortgage commitment from Alliance Savings and Loan which would comply with the terms specified in the contract. The letter also stated that Buyers' attorney regarded Sellers' offer to complete the financing for the purchase as an invalid exercise of the provisions in the real estate sale contract. The letter then announced that the contract was "null and void," and Buyers demanded the return of their earnest money.

When the earnest money was not forthcoming, Buyers initiated an action in the circuit court of Cook County on August 13, 1979, to compel the escrowee's release of the earnest money. Sellers filed a counterclaim, seeking forfeit of the earnest money as liquidated damages under the contract. After pleadings were filed, notices of deposition sent, and

certain factual admissions stipulated, the Buyers, and later the Sellers, moved for judgment on the pleadings under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45). The trial court granted Buyers' motion, finding that the "Sellers (Dixons) did not comply with the conditions of the Contract for the Sale of Real Estate and the equities are with the Buyers (Honkomps)." The trial court then declared the agreement null and void, dismissed Sellers' countercomplaint, and ordered the release of the escrow funds to Buyers. This appeal was taken from that order.

■■ The threshold issue raised by this appeal is whether the notice of appeal filed by the Sellers is sufficient to confer jurisdiction on this court. Our supreme court in *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380, noted the accepted policy that a notice of appeal is be liberally construed. "The notice of appeal serves the purpose of informing the prevailing party in the trial court that the unsuccessful litigant seeks a review by a higher court. Briefs, and not the notice of appeal itself, specify the precise points to be relied upon for reversal." (76 Ill. 2d 427, 433.) Under this standard, the notice of appeal in the instant case, while admittedly not a model of clarity and specificity, was sufficient to confer jurisdiction over the points raised in this appeal and to bring the propriety of the trial court's order before this court.

■■ The essential issue raised on this appeal is whether the actions of the Buyers constituted a breach of contract warranting forfeit of their earnest money deposit as liquidated damages. Buyers' motion for judgment on the pleadings was styled as a section 45 motion. (See Ill. Rev. Stat. 1979, ch. 110, par. 45.) On a motion by a plaintiff for judgment on the pleadings, the question posed is whether a defendant's answer constitutes a legally sufficient defense. (See *Pied Piper Yacht Charters Corp. v. Corbel* (1974), 17 Ill. App. 3d 281, 283, 308 N.E.2d 35.) If a material issue of fact exists, one which would determine the sufficiency of the defense, then the motion for judgment on the pleadings should be denied. See *Baillon v. S.S. Kresge Co.* (1972), 4 Ill. App. 3d 82, 84, 277 N.E.2d 719.

■■ Sellers contend that Buyers breached the real estate sale contract in at least two respects: first, Buyers did not use "reasonable efforts" to secure financing; second, Buyers repudiated their obligations under the contract. Sellers correctly reason that the contractual requirement that Buyers use "reasonable efforts" to secure financing is an express condition precedent to Sellers' performance under the contract. (See *Carroll v. Wied* (Tex. Civ. App. 1978), 572 S.W.2d 93, 96; *Bushmiller v. Schiller* (1977), 35 Md. App. 1, 8, 368 A.2d 1044, 1048; *Lach v. Cahill* (1951), 138 Conn. 418, 420-21, 85 A.2d 481, 482, and cases cited therein.) Thus the threshold question is whether Buyers complied with their obligations under the contract. (See *Docas v. G. A. D., Inc.* (1980), 84 Ill. App. 3d 883, 886, 406

N.E.2d 75.) Without Buyers' compliance with conditions precedent, there would be no occasion for Sellers' performance. (See *Feldman v. Oman Associates, Inc.* (1974), 20 Ill. App. 3d 436, 439, 314 N.E.2d 338; see also *Builder's Concrete Co. v. Fred Faubel & Sons, Inc.* (1978), 58 Ill. App. 3d 100, 106, 373 N.E.2d 863 (nonbreaching party not required to tender performance).) Plaintiff is required to plead and prove performance of all conditions precedent in a contract prior to any recovery under that contract. *Ralph v. Karr Manufacturing Co.* (1974), 20 Ill. App. 3d 450, 454, 314 N.E.2d 219.

Every contract contains an implied promise of good faith and fair dealing between the parties. (*Spircoff v. Spircoff* (1979), 74 Ill. App. 3d 119, 127, 392 N.E.2d 363.) In addition, the instant contract contains an explicit provision embodying that concept, *i.e.*, that the Buyers use "reasonable efforts" to secure financing. Thus, the requirement of "reasonable efforts" should be interpreted in the light of the principles of good faith and fair dealing.

Questions of reasonableness and good faith are generally issues of fact, entrusted for resolution to the trier of fact. (See *Olken v. Olken* (1980), 82 Ill. App. 3d 438, 441-42, 403 N.E.2d 30; *Harty Brothers & Harty Co. v. Carden-Callahan Co.* (1915), 192 Ill. App. 281 (abstract); *Meyers v. Selznick Co.* (2d Cir. 1966), 373 F.2d 218, 223.) In the case of *Lurie v. Rock Falls Manufacturing Co.* (1925), 237 Ill. App. 334, the court was presented with the question of what would constitute a "reasonable" length of time for a contracting party to complete its obligations under a contract. The court commented that the "appellant had the right to have the question of the reasonableness * * * submitted to the jury as a question of fact * * * ." (237 Ill. App. 334, 338; see also *Barliant v. Follett Corp.* (1978), 74 Ill. 2d 226, 238, 384 N.E.2d 316.) Similarly, in *Morris v. Anderson* (1970), 121 Ill. App. 2d 169, 259 N.E.2d 601, the court repeated the accepted rule that whether a person has acted in good faith is a question of fact. (121 Ill. App. 2d 169, 172; see also *Johnson v. Campanella* (1942), 314 Ill. App. 7, 40 N.E.2d. 905.) What might be "reasonable efforts" in one context might be manifestly unreasonable in another. This court has no empirical standard which would resolve the instant dispute. Rather, the question of how many loan applications must be submitted and pursued to constitute "reasonable efforts" requires the application of the subjective standard of "reasonableness." (See *Morris*, at 172.) We note that the cases which consider the issue of "reasonable efforts" focus on individual circumstances surrounding the Buyers' endeavors to obtain financing. See *Docas*, at 887 (token efforts to negotiate a lease held insufficient); *Smith v. Vernon* (1972), 6 Ill. App. 3d 434, 437-38, 286 N.E.2d 99 (token efforts to secure financing held insufficient); *Dodson v. Nink* (1979), 72 Ill. App. 3d 59, 64-65, 390 N.E.2d 546.

The emphasis on the individual facts presented by each case is

consistent with the accepted principle that the question of whether a contract has been performed according to its terms is an issue for resolution by the trier of fact. (See *Ralph*, at 454; see also *Pescaglia v. Gianessi* (1973), 9 Ill. App. 3d 582, 589, 295 N.E.2d 148.) A noted commentator has elucidated the role of the trier of fact in making determinations of reasonableness:

> "[T]he application of such a test as 'reasonableness' shows a high degree of variability. * * * The 'reasonable man' is an arrant fiction; and in any living case, the 'reasonableness' of anything must be determined by one or more specific living men whose judgment must necessarily depend upon their own mental power, their specific education and life experience, and their emotional characteristics and background. This test must be accepted, however, because we have no better. We must perforce submit ourselves to the judgment of some of our fellow men." (5 Corbin on Contracts §1020, at 124 (1964).)

The differing results in cases considering what constitutes "reasonable efforts" illustrate the lack of absolute standards and a reliance on the decision of the "reasonable man": the trier of fact. Compare *Bushmiller v. Schiller* (1977), 35 Md. App. 1, 8-9, 368 A.2d 1044, 1049, and *Rand v. B. G. Pride Realty* (Me. 1976), 350 A.2d 565, 568, and *Liuzza v. Panzer* (La. App. 1976), 333 So. 2d 689, 692, with *Stotz v. Cleveland* (1976), 53 App. Div. 2d 787, 788, 384 N.Y. Supp. 2d 540, 541; see also R. Aiken, *"Subject to Financing" Clauses in Interim Contracts for Sale of Realty*, 43 Marq. L. Rev. 265, 267-68 (1960).

In the instant case, Buyers applied for financing at one mortgage lender. (See 43 Marq. L. Rev. 265, 268 n.6, citing and quoting *Hannah v. Yanke* (unreported, Cir. Ct., Milwaukee County, Wis., 1957) ("This one effort to secure a loan does not sustain the [trial] court's conclusion that a bona fide effort was made to secure a loan"); *Fry v. George Elkins Co.* (1958), 162 Cal. App. 2d 256, 260, 327 P.2d 905, 907 (applications at two banks was not a bona fide effort).) Whether this one effort, when considered in the context of all the surrounding circumstances, is sufficient to satisfy the contractual requirement that Buyers put forth "reasonable efforts" to secure financing is a matter for resolution after a hearing on the merits.[1] See *Huckleberry v. Wilson* (Tex. Civ. App. 1955), 284 S.W.2d 205, 206.

---

[1] During oral argument before this court, Buyers' attorney, arguing the reasonableness of Buyers' financing attempt, inadvertently alluded to a fact not before the trial court: the amount of time devoted to the pursuit of Buyers' sole loan application. This fact would likely be central to a factfinder's determination of the reasonableness of Buyers' efforts. The disclosure of this fact on appeal confirms our conclusion that a fact issue was raised and judgment on the pleadings was unwarranted.

■■ Similarly, the issue of whether repudiation or anticipatory breach of the contract occurred is one of fact. (See *Ash v. Barrett* (1971), 1 Ill. App. 3d 414, 418, 274 N.E.2d 149.) This court, in *Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 405 N.E.2d 1051, discussed the principles relative to a finding of anticipatory breach:

> "An anticipatory breach occurs when a party to an executory contract manifests a definite and unequivocal intent prior to the time fixed in the contract that it will not render its performance under the contract when that time arrives. [Citations.] In such a case, the other party may treat the contract as ended. [Citations.] Further, we note that whether a party has committed breach is a *question of fact* * * * ." (Emphasis added.) (84 Ill. App. 3d 791, 802-03; see also *Henderson v. Lemna* (1979), 76 Ill. App. 3d 168, 170-71, 394 N.E.2d 1070.)

Thus a determination of whether the acts of a party demonstrate a clear intent to repudiate a contract is a matter properly entrusted to the trier of fact. (See *Stonecipher v. Pillatsch* (1975), 30 Ill. App. 3d 140, 142-43, 332 N.E.2d 151.) To grant judgment on the pleadings where a matter is properly within the purview of the trier of fact, the facts must be such that a reasonable man can determine the issue in only one way. (See also *Construction Aggregates Corp. v. Hewitt-Robins, Inc.* (7th Cir. 1968), 404 F.2d 505, 509, *cert. denied* (1969), 395 U.S. 921, 23 L. Ed. 2d 238, 89 S. Ct. 1774; see generally *Rankin v. Fidelity Insurance, Trust & Safe Deposit Co.* (1903), 189 U.S. 242, 253, 47 L. Ed. 792, 797, 23 S. Ct. 553, 557.) Thus this case must be remanded for a hearing on the issues of whether Buyers' conduct breached the condition precedent of "reasonable efforts" to secure financing or whether Buyers' actions amounted to anticipatory breach.

■■ Buyers, nevertheless, argue that Sellers' failure to offer a purchase money mortgage in compliance with the terms of the contract rendered the contract null and void, presumably curing any breach committed by Buyers. The agreement gave Sellers the opportunity to obtain financing in the event that Buyers, after exerting "reasonable efforts," were unable to secure a mortgage. If Buyers repudiated the contract or failed to comply with conditions precedent, Sellers were relieved of any further obligations under the contract. Indeed, any attempt to secure financing may well have been vain and useless. See *Liuzza v. Panzer* (La. App. 1976), 333 So. 2d 689, 692.

If on remand the issues of "reasonable efforts" and repudiation are resolved in Buyers' favor, then the effect of Sellers' offer or alternative financing may be considered. See generally *Stearns v. Western* (1967), 87 Ill. App. 2d 465, 476, 232 N.E.2d 126.

For the foregoing reasons, the judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

DOWNING and PERLIN, JJ., concur.