JOHN R. GARDNER, Plaintiff-Appellant, v. HECTOR PADRO *et al.*, Defendants-Appellees.

Second District   No. 2—86—0720

Opinion filed December 29, 1987.

John R. Gardner, of Waukegan, appellant *pro se.*

Bernard R. Winter, of Fuqua, Winter, Wysocki & Stiles, Ltd., of Waukegan, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, John R. Gardner, sued to secure the return of earnest money paid to defendants pursuant to a contract to purchase real estate. After a bench trial in small claims court, judgment was entered for defendants. On appeal plaintiff asserts that the trial court erred in finding that defendants, Hector and Genevieve Padro, qualified as a "lending institution" as that term is used in the real estate sales contract. Defendant raises issues of waiver and insufficiency of plaintiff's case. We reverse the lower court.

On or about either June 25, 1985, or July 8, 1985, Gardner entered into a contract with the Padros for the purchase of the Padros' home. The contract set forth the purchase price of the property and indicated that $1,500 was to be paid as earnest money. Although paragraph 4A provided that the contract was contingent upon the buyer's securing

financing within 90 days, it did not set forth the type, amount, interest rate, or term of the loan to be secured. The spaces for this information were lined through. Paragraph 4A also stipulated that if the buyer could not secure financing within the specified time, the seller had to be notified in writing in order for buyer to avoid a waiver of the contingency. If notice was properly given the seller had the option of securing a financing commitment for the buyer, within another 90 days, from a lending institution upon the terms set forth within the contract. If the seller failed to obtain such a commitment, the contract was to be "null and void and earnest money returned."

Gardner notified the Padros by letter of September 25, 1985, that he had not received a financing commitment. On October 18, 1985, plaintiff filed a small claims complaint alleging that the Padros refused to return his earnest money even though the contract had expired. In a letter dated November 12, 1985, the Padros offered to take back a purchase money mortgage on the same terms plaintiff would have received from the mortgage house to which he had applied for a loan. The record reflects subsequent offers by Gardner to purchase the defendants' property on the basis of at least partial financing by the Padros. In January 1986, the defendants sold the house to their daughter.

Following a bench trial the court found both that Gardner had complied with the contract by giving defendants notice that he could not get financing and that the Padros had complied with the contract by offering financing to plaintiff "in terms of the intent of the *** parties." Finally, the court found that Gardner's failure to respond to defendants' offer constituted a breach of the real estate sales contract. Judgment was entered in favor of the Padros. At the hearing on plaintiff's motion for reconsideration, the court indicated that it believed it had correctly construed the intent of the parties as expressed by the contract. Gardner's motion was denied, and he now appeals.

The only issue raised by plaintiff on appeal is whether the term "lending institution" in the contract applies to defendants. The section of the contract which grants to seller the option of seeking financing for buyer is found in paragraph 11(A), which states in pertinent part:

"[U]pon notice of Buyer's inability to obtain mortgage financing being given, Seller may, at Seller's option, within an equal number of additional days of said notice, secure a written commitment from a lending institution for a loan to Buyer upon the same terms. In such event, Buyer agrees to promptly furnish all requested credit information and sign customary papers relating to the application and securing of mortgage commitments."

Defendants take the position that they qualify as a "lending institution" and that by offering to take a purchase money mortgage from plaintiff, they exercised the option available to them. Plaintiff responds that the Padros are not a lending institution as intended by the contract and that he was under no obligation to accept the private financing they offered. We agree with plaintiff.

At the outset we note that neither party has provided us with the original contract which was admitted into evidence at trial. However, plaintiff attached what purports to be a copy of the contract as an exhibit to his motion for summary judgment which was filed on March 31, 1986. In their appellate brief defendants appear to rely on this exhibit, or at least they do not object that it is not a valid copy of the contract. We note also that at the hearing on plaintiff's motion for reconsideration, the trial judge indicated that the copy of the contract he was relying on at that time was the copy attached to the motion for summary judgment which was in the file. Defendants did not object to use of the copy. Accordingly, we regard the copy of the contract which is attached to plaintiff's motion for summary judgment, and included in the record, as a true copy of the original.

In construing a contract the primary objective is to give effect to the intent of the parties at the time they entered into the contract. (*Braeside Realty Trust v. Cimino* (1985), 133 Ill. App. 3d 1009, 1011, 479 N.E.2d 1031.) When the contract terms are clear and unambiguous, the intent of the parties must be discerned only from the language used in the contract itself. (*Village of Grandview v. City of Springfield* (1984), 122 Ill. App. 3d 794, 797, 461 N.E.2d 1031.) A contract is ambiguous only if the language used is reasonably or fairly susceptible to having more than one meaning, but it is not ambiguous if a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from the general language of the contract. (*Berutti v. Dierks Foods, Inc.* (1986), 145 Ill. App. 3d 931, 934, 496 N.E.2d 350.) Nor is a contract rendered ambiguous simply because the parties do not agree on the meaning of its terms. (*Berutti*, 145 Ill. App. 3d at 934.) When contract terms are unambiguous they must be given their ordinary and natural meaning. (*Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 219, 422 N.E.2d 879.) We find the disputed terminology of the contract at bar to be clear and unambiguous. That the parties do not agree on its meaning does not make it less so.

The contract under consideration here is an agreement to purchase real estate. In our view, the phrase "lending institution" in such a contract ordinarily and naturally refers to a commercial enterprise or

organization which is engaged in the business of making mortgage loans rather than to a private, individual seller who offers financing to the buyer. Moreover, those paragraphs of the contract which refer to "lending institution" all provide, in one way or another, for the buyer to finance the purchase through a loan from a lender other than the seller. In Paragraph 4A seller agrees to pay the discount required by "lending institution." Paragraph 11(A) describes the seller's option to obtain a loan commitment for the buyer from a third-party "lending institution." In the paragraph which discusses the closing, the parties inserted the words "lending institution" into the following sentence: "The place of closing shall be lending institution." Thus, closing was to take place at the location of the third-party lender. In contrast, the purchase money mortgage offered here was to be directly between the buyers and sellers. No third-party lender was involved.

We note, too, that all of the paragraphs which allow for financing by a third party discuss formal loan applications, loan service charges, appraisal and credit investigation fees, and discount fees. These are the kinds of requirements normally and routinely imposed upon a borrower by a mortgage lender, whereas the purchase money mortgage proposed by defendants would have been a transaction only between buyer and seller and would have included only those conditions desired by the parties. Close review of the contract unmistakably indicates to us that a "lending institution," as the term is used in the contract, refers to a well-established entity, such as a bank or a mortgage lending company, organized for the purpose of making mortgage loans.

When the pertinent language of the contract is given its ordinary and natural meaning it is not reasonably susceptible to more than one meaning and, thus, is not ambiguous. Rather, it reveals that when they entered into the contract the parties intended that Gardner should get his financing from a commercial mortgage lender rather than from a private party such as the Padros. While defendants do not agree with the meaning of "lending institution" argued by plaintiff, and perceived by us to be correct, such disagreement does not render the language ambiguous. *Kurti v. Fox Valley Radiologists, Ltd.* (1984), 124 Ill. App. 3d 933, 941, 464 N.E.2d 1219.

Our conclusion regarding the meaning of the phrase "lending institution" as used in a real estate contract is supported by the law of both this and other jurisdictions. In *Stearns v. Western* (1967), 87 Ill. App. 2d 465, 232 N.E.2d 126, the contract called for part of the purchase price of real estate to be paid from proceeds of a mortgage to be obtained by the buyer. The contract contained a handwritten clause making the sale contingent upon purchaser *or seller* obtaining a first

mortgage loan. Despite having submitted three applications, the buyer could not get a mortgage commitment and timely notified the seller. The seller then offered to take back a purchase money mortgage. When the offer was rejected the seller refused to return the buyer's earnest money. On these facts the court stated:

> "Under the agreement between the parties there can be no doubt that the financing of the sale was to be obtained from an outside mortgage house, and it was not contemplated that a purchase money mortgage would be given." *Stearns*, 87 Ill. App. 2d at 471.

The *Stearns* court found support for its conclusion in the following language from *Garlete v. Rodriguez* (La. App. 1961), 126 So. 2d 182, where purchase was conditioned on obtaining a loan from a homestead building and loan association:

> " 'Any one having experience with the purpose and operation of such associations knows full well that they are organized to promote thrift and homeowning; are very paternalistic in seeing that real estate taxes and insurance premiums are paid, and less harsh in defaulting their borrowers than private lenders. Furthermore, such associations usually retain their vendor's lien and mortgages for the full period, while private lenders often find it convenient to dispose of the mortgage and possibly submit the borrower to the whim or caprice of an unexpected and unwanted creditor.' " (*Stearns*, 87 Ill. App. 2d at 471, quoting *Garlete*, 126 So. 2d at 184.)

The *Stearns* court also noted that the terms of the sellers' proposal for a purchase money mortgage did not conform to the terms of the original contract. The proposal was found to be a counteroffer which in no way obligated the buyers.

The contract in the case at bar, like the contract in *Stearns*, specified that the purchase was to be financed by the proceeds of a mortgage and that either the buyer or seller could seek a mortgage loan commitment. Thus, while the *Stearns* contract did not actually include the phrase "lending institution," its provisions are very similar to the contract provisions now before us. On the basis of those provisions, and despite the absence of a reference to "lending institution," the *Stearns* court concluded that the parties had intended for financing to be obtained from a professional mortgage lender and had not expected that a purchase money mortgage would be given. Consequently, defendant's offer did not comply with the contract, and the buyer was entitled to the return of its earnest money. Likewise, we believe the language of the instant contract shows that at the time of

contracting the parties anticipated that financing would be provided by an established, recognized mortgage lending firm and had no intention of entering into a purchase money mortgage. The defendants' tender of such a mortgage cannot now be said to have been in conformance with the contract merely by attempting to characterize the Padros as a "lending institution."

The status of a lender as a "lending institution," as the term was used in a real estate sales contract, was examined in *Asplund v. Marjohn Corp.* (1961), 66 N.J. Super. 255, 168 A.2d 844. In *Asplund*, financing was to be secured from a "lending institution." Plaintiffs contended that the lender proffered by the seller did not meet the requirements for such an entity. The *Asplund* court explained that an "institution" is generally defined as an "established or organized society or corporation, either public or private in character," which connotes a significant degree of internal organization and legally authorized stability. (*Asplund*, 66 N.J. Super. at 263, 168 A.2d at 848.) The court then looked to the State banking act which defined "lending institution" as any one of a number of banks, all of which were incorporated under State or Federal law. The court also considered the statutory distinction between corporations and individuals and concluded: "We conceive of a 'lending institution' as an established public or private financing body, incorporated or otherwise recognized under appropriate law." (*Asplund*, 66 N.J. Super. at 263-64, 168 A.2d at 848-49.) The court then applied its construction of the term to the situation under consideration:

> "In the context of this contract our interpretation implements the desire of many borrowers to deal with an established firm in order to be assured that the loan transaction and any future difficulties related to its performance will be openly and fairly resolved; and, moreover, to be assured at the time the commitment issues that it will be honored at the time of the closing."

(*Asplund*, 66 N.J. Super. at 264, 168 A.2d at 849.)

The lender proposed by the seller in *Asplund* was found not to be a corporation and not to have been sufficiently engaged in mortgage banking to be deemed a "lending institution."

We find ourselves in agreement with the analysis of *Asplund*. Like the court in that case, we have concluded that the ordinary and natural meaning of "lending institution" is an organized enterprise in the business of making loans rather than an individual seller willing to take back a mortgage from the purchaser of his home. While we can find no definition of "lending institution" in the Illinois Banking Act (Ill. Rev. Stat. 1985, ch. 17, par. 301 *et seq.*), plaintiff cites to the defi-

nition of the phrase found in the Illinois Housing Development Act (Act) (Ill. Rev. Stat. 1985, ch. 67½, par. 302(d)). Every type of entity listed therein is incorporated or organized and recognized under State or Federal law or is "any other entity or organization which makes or acquires loans secured by real property." Under the Act the housing authority may, among other things, make loans to lending institutions to be used for residential mortgages or other housing related purposes. It is evident from the definition that the Act considers lending institutions to be legally recognized entities which are in the business of making mortgage loans. While we acknowledge the limitations of the Act's definition of "lending institutions," it is nevertheless supportive of our conclusion here, just as the definition relied on in *Asplund* aided the court there.

■ Finally, it is noteworthy that both the *Stearns* and *Asplund* courts addressed the benefits and security enjoyed by a buyer who obtains a mortgage from an established lending firm rather than from a private individual. We, too, find the element of a borrower's reliance and desire for security to be a compelling reason to conclude that the parties here understood that, in the absence of an agreement otherwise, "lending institution" meant an established financing firm. As aptly stated by the *Asplund* court:

> "Plaintiffs bargained for, and obtained in their contract, the assurance of the security of an established mortgage institution as a condition precedent to their obligation to consummate the purchase. The condition may be considered a substantial one, in light of the reliance of an individual purchaser on the stability and responsibleness of a proposed mortgagee, upon the strength of whose commitment the buyer generally proceeds to dispose of his existent homestead and to plan a well-timed entry into new quarters, as well as to invest the time, effort and money entailed in preparing for closing. The condition failing to occur, by virtue of the nonproduction of a 'lending institution,' plaintiffs' exercise of their contractual privilege of withdrawal was entirely proper." *Asplund*, 66 N.J. Super. at 267, 168 A.2d at 850.

■ Even if we could not discern the parties' intent from the language of the contract itself, evidence of their actions at the time of contracting would persuade us that they both thought the purchase would be financed by a professional lender. Gardner testified that Padro drafted the contract and submitted it to him. We note that the contract is basically a form contract approved by the Lake County board of realtors. We assume, therefore, that when Gardner spoke of the contract being "drafted" he meant that the Padros filled it in before giv-

ing it to him. Gardner's testimony was not contradicted. Paragraph 4 of the contract is entitled "Financing" and states: "This contract is contingent upon (cross out inapplicable subparagraphs)." Subparagraphs B and C have been completely drawn through with a large X. Subparagraph B provides for either a purchase money mortgage or an installment purchase. Subparagraph C provides for a loan assumption. Gardner contends on appeal that subparagraph B was crossed out by Padro during their original negotiations. This allegation is nowhere disputed. We conclude that, at the outset, Padro did not consider a purchase money mortgage to be a viable financing vehicle and both parties signed the contract with the understanding that financing would be sought from a commercial lender, or, as stated in the contract, a "lending institution."

█ Having concluded that the Padros do not qualify as a lending institution under the contract, we turn now to the Padros' claim that Gardner waived any right to object to financing through a purchase money mortgage by continuing to negotiate for the purchase of their property after he had rejected their offer to finance. There is no merit to this argument. Gardner timely notified defendant that he could not obtain a mortgage loan commitment. The sellers then had the option of securing a loan from a lending institution for Gardner. As we have explained above, the Padros did not do this. Instead, they made a new offer to Gardner to finance the purchase themselves. This new offer was totally separate and apart from the already existing contract between themselves and Gardner. When the requisite financing was not realized within the specified time, the contract became null and void by its own terms, and the earnest money became due and owing to plaintiff. Subsequent negotiations between Gardner and the Padros constituted offers and counteroffers but in no way waived any of Gardner's rights under the contract.

█ Defendants also argue that Gardner failed to carry the burden of proof at trial that he had made a good-faith effort to obtain financing. It is not disputed that Gardner applied for a mortgage loan commitment but did not receive one within the 90 days allowed by the contract. Rather, defendant maintains only that plaintiff should have presented evidence as to why he was rejected. This argument cannot be supported, either.

We note first of all that Gardner testified that he was not in fact rejected but that a loan commitment was not received until long after the contractual time period had expired. A copy of a letter from Fleet Mortgage Corporation informing Gardner that his mortgage had been approved was admitted into evidence. The letter is not dated, but

plaintiff testified that he thought he had received it in March 1986. The 90 days allotted for Gardner to secure financing had ended on or about September 25, 1985. Gardner's evidence was not contested.

A receipt for documents sent to Fleet Mortgage was also admitted into evidence without objection. Plaintiff testified that the receipt was dated July 11 and showed that he applied for a mortgage immediately after the contract was signed. The contract had been signed on either June 25, 1985, or July 8, 1985. In our view, Gardner's uncontested evidence that he applied for the loan very shortly after the contract was signed, that he had not received his loan commitment within the required 90 days, and that his loan was ultimately approved is sufficient to show a good-faith effort on his part to obtain financing. Since his application was at no point rejected by the lender there would have been no purpose in his seeking a loan from other sources. Moreover, Gardner could do little, if anything, to expedite a mortgage commitment since the loan approval process is in the exclusive control of the lender.

■■ Defendant infers that Gardner himself delayed the loan process so he would not have to go through with the real estate purchase. The relevant testimony cited by defendant was given by Padro and his counsel and indicated that at or near the expiration of the time for buyer to secure a loan, Padro was told by the lender that Gardner's loan prospects looked good. All that was still needed was for Gardner to sign a few remaining documents. Defendant suggests that plaintiff intentionally failed to sign the documents in a timely fashion. This suggestion is not supported by the record. There was no testimony from the lender as to when or how it attempted to contact plaintiff or as to what still needed to be signed. The record is devoid of evidence that any documents had not been signed as a result of Gardner's recalcitrance. Defendant's inferences do not dissuade us from our conviction that plaintiff made the good-faith effort required of him by the contract.

Based on the reasoning expressed above, the judgment of the circuit court of Lake County is reversed, and the trial court is directed to enter judgment in favor of plaintiff.

Reversed.

NASH and DUNN, JJ., concur.