SPARHAWK v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. January 18, 1905.)

No. 13.

1. CONTRACT FOR FURNISHING GOVERNMENT SUPPLIES—CONSTRUCTION.

A contract for the furnishing of supplies to the United States for the use of the Post Office Department during a fiscal year bound the contractor to furnish such supplies "in such quantities, and in such quantities at a time and from time to time, as may be ordered," and provided that, on the failure to furnish any such supplies within 30 days after they were ordered, the Postmaster General should have the right to purchase the same in the open market, and, if a greater price was paid, the difference between such price and the contract price should be charged to the contractor. There was a further provision authorizing the Postmaster General to annul the contract for any failure of the contractor to perform any of its covenants, and that the exercise of such authority should not affect or impair any right or claim of the United States to indebtedness or damages for the breach of any of its covenants. *Held*, that the annulment of the contract under such provision did not affect the right of the United States to thereafter purchase supplies to fill orders previously given and not filled by the contractor, and to recover from the contractor the difference between the cost and the contract price.

2. SAME—BREACH—EFFECT OF CONTRACTOR'S BANKRUPTCY.

Under a contract for furnishing supplies for the use of the Post Office Department during a fiscal year "in such quantities, and in such quantities at a time and from time to time, as may be ordered," but which did not bind the government to order any specified quantity, there can be no breach by the contractor for a failure to furnish supplies unless they were ordered, and the fact that the contractor became bankrupt during the term did not create any liability on his part for a failure to furnish supplies thereafter, where none were ordered.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

Samuel Scoville, Jr., and Charles H. Edmunds, for appellant.

Jasper Yeates Brinton and J. Whitaker Thompson, for the United States.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. The proof of claim of the United States was in the sum of $7,816.95 for actual damages sustained by

reason of the failure of the bankrupt (Charles M. Stoever) to perform a written contract made July 24, 1899, between the United States, of the first part, and Charles M. Stoever, as principal, and the United States Fidelity & Guaranty Company, as surety, of the second part, whereby it was stipulated that Stoever would furnish and deliver from time to time, as the same might be ordered during the fiscal year beginning July 1, 1899, and ending June 30, 1900, certain supplies of wrapping paper for use of the Post Office Department. We quote such parts of the contract as are most material for the understanding of this controversy.

"First. The said parties of the second part hereby covenant and agree to and with the said party of the first part that the said Chas. M. Stoever shall and will furnish and deliver, at and for the prices hereinafter covenanted and agreed to be paid therefor by the party of the first part, and in such quantities, and in such quantities at a time and from time to time, as may be ordered for the use of the Post Office Department and postal service, the following mentioned articles specified in said advertisement, to wit:

\* \* \* \* \* \* \* \* \*

"And it is further expressly agreed that in case of the failure of said Chas. M. Stoever, principal of the party of the second part, to furnish any of said articles within thirty days after they have been ordered, the right is reserved by the Postmaster General to purchase such articles in open market; and if a greater price than that specified in this contract be paid for such articles, the total difference between the purchase price and the contract price may be charged to the said party of the second part.

\* \* \* \* \* \* \* \* \*

"The said parties of the first and second part hereby mutually stipulate and agree that this contract may be annulled by the Postmaster General for any failure, in his opinion, of the said Chas. M. Stoever to do and perform any of the covenants, agreements, or stipulations herein covenanted, agreed, and stipulated to be done or performed by the said parties of the second part, or in case of a willful attempt by him to impose upon the department articles inferior to those required by this contract; and the said parties of the second part further expressly agree that the termination of said contract as aforesaid, or anything done by the Postmaster General in pursuance of the stipulation, shall not affect or impair any right or claim of the United States to indebtedness or damages for the breach of any of the covenants of the contract by the parties of the second part."

The contract contains a provision that, in case of the failure of Stoever to perform any of his stipulations, he shall become indebted to the United States in the sum of $10,000 as fixed and settled damages; but this provision may be disregarded, for not only does section 57, subd. "j," of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3444]) exclude proof by the government upon the basis of such a penalty, but in fact the United States has made its proof of claim here for actual damages only.

The appellant has abandoned as untenable his position that the claim of the United States is barred by reason of the failure to make proof thereof within a year from the adjudication herein, and accordingly has waived his first assignment of error. Hence the controversy in this case is narrowed to the question of the amount of damages allowable to the United States and provable against the bankrupt's estate.

It appears that seven orders under the contract were made on Stoever from September 20 to December 5, inclusive, 1899, aggregating 16,000 reams of paper; that Stoever failed to fill any of these

orders; and that, pursuant to the terms of the contract, purchases were made to supply these unfilled orders, the excess paid for the 16,000 reams over the contract price amounting to $5,741.95. Five of these purchases were made between November 23, 1899, and January 9, 1900, one on January 30, and one on February 8, 1900. On January 22, 1900, the Postmaster General, by an order reciting the failures of Stoever to furnish the articles ordered, declared him to be a failing contractor. Both the referee in bankruptcy and the district judge assumed that the order of January 22, 1900, was an annulment of the contract under the above-recited provision.

On February 7, 1900, a petition by creditors of Charles M. Stoever was filed, praying that he be adjudicated an involuntary bankrupt, and on March 28, 1900, he was adjudged a bankrupt. The United States claims the excess of $5,741.95 mentioned above, and this the referee in bankruptcy allowed. But, in addition thereto, the United States claims an excess over contract price of $2,075 paid on 7,100 reams of paper purchased on various dates between February 8 and June 4, 1900, although it appears that no order for any part of the 7,100 reams of paper was made on Stoever. This latter claim the referee disallowed. The trustee excepted to the allowance to the United States of the sum of $5,741.95, and the United States excepted to the disallowance of the sum of $2,075. The court overruled the exceptions of the trustee, and sustained the exception of the United States, and decreed in favor of the government for the full amount of its claim, $7,816.95. From this decree the trustee appealed.

The trustee insists that the excess of cost price over the contract price of the two lots of paper purchased on January 30 and February 8, 1900, amounting to $2,090.55, should be disallowed, because the contract had been annulled by the Postmaster General on January 22, 1900, and the damages in respect to those items did not accrue and had no existence until after the annulment. The contract, however, provides—

"That the termination of said contract as aforesaid, or anything done by the Postmaster General in pursuance of the stipulation, shall not affect or impair any right or claim of the United States to indebtedness or damage for the breach of any of the covenants of the contract by the parties of the second part."

Now, the two lots of paper here particularly in question were duly ordered from Stoever on December 5, 1899, and thus Stoever became absolutely bound to furnish the paper, and the right of the United States thereto was fixed. That right was not affected or impaired by anything that afterwards took place. By the terms of the contract the right was preserved, notwithstanding an annulment of the contract by the Postmaster General; and, of course, the subsequent petition and adjudication in bankruptcy could not defeat, and did not impair, the fixed right of the United States.

In overruling the action of the referee disallowing the claim of the United States for $2,075, the excess over the contract price paid on the last four purchases, the learned District Judge overlooked the terms of the contract. On the one hand, the United States did

not bind itself to give any orders for supplies; and, on the other hand, Stoever was not bound to furnish supplies until ordered. Until an order was given, Stoever could not know what supplies were wanted, and would not be in any default. The contract provides that Stoever will—

"Furnish and deliver, at and for the prices hereinafter covenanted and agreed to be paid therefor by the party of the first part, and in such quantities, and in such quantities at a time and from time to time, as may be ordered for the use of the Postoffice Department and postal service, the following mentioned articles."

In each instance the government was to be the first actor, giving the contractor an order for supplies. It is further stipulated that, in case of the failure of Stoever to—

"Furnish any of said articles within thirty days after they have been ordered, the right is reserved by the Postmaster General to purchase such articles in open market; and if a greater price than that specified in this contract be paid for such articles, the total difference between the purchase price and the contract price may be charged to said party of the second part."

Plainly, under these provisions, there would be no default on the part of Stoever until the articles were ordered by the government. There was no breach of the contract by Stoever during the time within which the last four purchases were made; for no order was given after December 5, 1899. We think it is not a satisfactory answer to say "that the bankruptcy had totally disabled the contractors from performing their agreement, and therefore made notice a useless formality." We do not see that the bankruptcy had made performance by the contractors impossible. Moreover, if the United States intended to hold Stoever and his surety in damages for nondeliveries in the future, orders for the goods were indispensable conditions precedent to the successful assertion of such a claim. Nor can we accept the suggestion "that, as the contract had been annulled for cause," the bankrupt was not entitled to notice. If the contract was annulled, the annulment released both parties as respects to the future.

We are not able to assent to the point made by the counsel of the appellee that this was an entire contract, in the sense that a single breach by Stoever fixed his liability for the damages in their entirety. The argument overlooks the fact that the government had not bound itself to give any orders for supplies, and that the covenant of Stoever was only to furnish supplies from time to time as orders were given. In the very nature of the case the contract was severable, as to the orders on the one side and performance and breaches on the other side.

We think that the referee was right in his conclusions, and that all the exceptions to his report should have been overruled, and his report confirmed.

The decree of the District Court is reversed, and the cause is remanded to the court for further proceedings in accordance with this opinion.