## JOSEPH BUSHMILLER v. EUNICE MYRTA SCHILLER

[No. 544, September Term, 1976.]

*Decided February 8, 1977.*

The cause was argued before LOWE, MELVIN and LISS, JJ.

*J. Earl Plumhoff* for appellant.

No appearance for appellee.

MELVIN, J., delivered the opinion of the Court.

The dispute in this case is over which of the parties to a real estate contract is entitled to a $13,000 deposit initially received by the seller (appellant) from the buyer (appellee) as part payment of the $130,000 purchase price for a residential property located in Baltimore County. By suit and counter-suit, each party sought judgment against the other for the amount of the deposit. After a bench trial in the Circuit Court for Baltimore County (Proctor, J.), the buyer and original plaintiff, Mrs. Eunice Myrta Schiller, emerged victorious with a judgment for $13,000 against the seller and original defendant, Mr. Joseph Bushmiller. Judgment was also entered against Mr. Bushmiller in his counter-suit. Aggrieved by the results, Mr. Bushmiller has appealed to us to set aright what he perceives as a wrong decision by the trial court.

The dispute over the deposit had its genesis when Mrs. Schiller won "a million dollar lottery" in the Maryland State Lottery, entitling her to receive $50,000 a year for 20 years. Not long after this fortuitous happening, she entered into a written contract with Mr. Bushmiller, dated 25 July 1975, to purchase his house for $130,000. The contract provided for the payment of a deposit of $13,000 to be applied as part payment of the purchase price. Settlement was to be within 45 days and "[i]f the Purchaser ... fail[ed] to make full settlement", the deposit was to be "forfeited at the option of the Seller, in which event the Purchaser shall be relieved from further liability . . . ."

The contract further provided that,

> "This contract is subject to the ability of the Purchaser to secure [within 10 days], a written commitment for . . . [a] first mortgage secured on said premises in the amount of $100,000, for a term of Twenty (20) years, and bearing interest at the rate of prevailing per annum [sic].
>
> "Purchaser utilizing a loan agrees to make application immediately and file all necessary

papers that are required to complete processing, including resubmission and appeal where necessary, and agrees that failure so to do shall give the Seller the right to declare the deposit forfeited . . . . . "

In her suit to recover the deposit Mrs. Schiller alleged that she "was unable to obtain the necessary financing and advised the Defendants and each of them and demanded the refund of the deposit monies and . . . Defendants have failed and refused to return said monies". The gravamen of Mr. Bushmiller's counter-suit was that Mrs. Schiller "was obligated under the terms of the aforesaid Contract to act in good faith in securing a written commitment for a first mortgage within ten (10) days from the date of the Contract, and said Counter-Defendant wholly failed and refused to act in good faith to secure the said mortgage commitment, notwithstanding that mortgage monies on the terms required under the contract were readily available to the Counter-Defendant". By a "Stipulation of Counsel" filed prior to trial, Mr. Bushmiller's damages against Mrs. Schiller were "limited to the sum of Thirteen Thousand Dollars ($13,000.00)", the amount of the deposit that had been paid into court by Bushmiller's agent who had originally received it from Mrs. Schiller.

## The Evidence

The pertinent facts as found by the trial judge can be summarized as follows:

Mrs. Schiller became interested in buying Mr. Bushmiller's property. Before submitting an offer she telephoned the Equitable Trust Bank on Wednesday 23 July 1975 to inquire about the possibility of a mortgage loan. She talked to a Mrs. Davis who was a mortgage loan officer for Equitable. Mrs. Davis advised her that a mortgage loan would in all probability be favorably considered on the basis of a 20-year mortgage with "ballooning" at the end of five years. Mrs. Schiller did not understand what the term "ballooning" meant and at that time made no effort

to find out. The next day, 24 July, Mrs. Schiller filled out a formal application for a mortgage loan of $97,500.00, to be repaid in "300 months" (25 years). On the same day, Mrs. Schiller signed an undated contract of sale prepared by her agent, a Mr. Collins of Century 21, a real estate brokerage firm. Mrs. Schiller then left the Baltimore area to visit her sister in Connecticut.

On Friday, 25 July 1975, Mr. Collins submitted the contract offer to Mr. Bushmiller. As prepared by Mr. Collins, the contract provided that the time within which the purchaser was to secure a written commitment for the mortgage loan was 30 days. Mr. Bushmiller wanted that time period reduced to 10 days. Mr. Collins telephoned Mrs. Schiller in Connecticut and Mrs. Schiller agreed to the change by a telegram dated 25 July 1975. The change was made in the contract itself and initialed by Mr. Collins as agent for Mrs. Schiller. As thus amended, the contract was dated and executed by Mr. Bushmiller on 25 July 1975.

On Sunday 27 July, Mrs. Schiller left Connecticut and went to New Hampshire to visit her son. As found by the trial judge, "when she gets to her son's her eyes are opened, first, as to what balloon mortgage financing means, and secondly, as to the problems involved in a large expensive house. She immediately calls off the Equitable Trust Company loan, and then does nothing more." The record shows that Mrs. Schiller telephoned Equitable from New Hampshire on either 28 July, 29 July, or 30 July (probably 29 July) and cancelled her loan application. There is no indication in the record that she notified Mr. Bushmiller of the cancellation.

Mrs. Schiller returned to Baltimore in the late evening of 5 August, eleven days after the date the contract was executed. On 6 August, Mr. Bushmiller's agent contacted Mrs. Schiller. The agent's testimony (which the trial court found to be uncontradicted) concerning her conversation with Mrs. Schiller was as follows:

"Then Mrs. Schiller told me that when she was in New Hampshire and talked to her son, he told her that it was unwise for her to buy this house. She

said, ["]I cannot afford it; this is ridiculous. He's shown me that I will have to pay capital gains on my house, ["] which was not true because she was reinvesting the money; and I tried to explain this to her. She said, ["] [W]ell, it doesn't — I just can't afford the house; ["] and she said ["] [I]t doesn't matter. ["] And when we mentioned the means of financing that we had available and the fact that it was savings and loans money available at the terms that she wanted, she said ["] [T]hat doesn't matter, I'm not interested in buying the house; I can't afford it; my son has advised me against it. ["] "

It appears that on 6 August, the day after her return to Baltimore, Mrs. Schiller also contacted Mrs. Davis of Equitable and told her she did not want a "balloon" mortgage. On 7 August Mrs. Davis wrote to Mrs. Schiller as follows:

"Dear Mrs. Schiller:

Pursuant to our telephone conversation of August 6, 1975, I must issue a letter of decline in answer to your mortgage request.

When I was first approached by Mrs. Spilman of Piper & Co. concerning financing for you, I told her that it would appear Equitable Trust would help you based on a $100,000.00 loan written for 5 years based on a 20 year payout. The interest rate would be determined when the loan was presented for approval. Since, on your application, you have specifically requested a straight 25 year mortgage loan and are not willing to consider a five year loan with a balloon payment, I must decline your loan request.

Thank you for the opportunity to be of service to you.

Very truly yours,

/s/ Verna Q. Davis
Mortgage Officer"

Also on 7 August, Mrs. Schiller's attorney wrote to Mr. Bushmiller's agent and to Mr. Collins as follows:

"Dear Sir & Madam:

Our office represents E. Myrta Schiller and have had referred to it, for attention, the contract for the captioned property dated July 25, 1975.

As both of you know, Mrs. Schiller promptly made application for a mortgage loan with The Equitable Trust Company in the amount of $100,000.00 for a term of twenty years, repayable in monthly installments of principal and interest only.

We regret to advise that The Equitable Trust Company has turned down the application and was only willing to grant a 20 year amortization plan with a 5 year balloon.

As the balloon provision is unacceptable, I must advise that the purchaser was unable to secure a written commitment for the first mortgage described in the contract within ten days from the date of the contract.

Please, therefore, promptly return the $13,000.00 being held by you to the writer.

If there are any further negotiations to be conducted under a new contract between the seller and my client, I would appreciate your clearing the same through this office. I am enclosing herewith, for your records, a copy of the letter received from The Equitable Trust Company indicating that they would only write the mortgage loan under a balloon clause.

Very truly yours,

THEODORE C. DENICK"

The record reveals no further contact between the parties

until 13 October 1975. On that date Mr. Bushmiller's attorney wrote to Mrs. Schiller's attorney as follows:

"Dear Mr. Denick:

As you know, this office represents Joseph Bushmiller, the owner and seller of the property known as 401 Falls Road. The seller's position remains unchanged, in that he is still ready, willing and able to convey the property to Mrs. Schiller under the contract of sale dated July 25, 1975.

It is our belief that Mrs. Schiller's failure to consummate this contract constitutes a breach of the contract; and we intend to hold Mrs. Schiller's deposit of $13,000.00, and we further intend to hold her liable for any damages which we sustain on resale of the property. We presently have two buyers who have offered $100,000.00 for the purchase of the property. Although we feel the property is worth more than $100,000.00, neither of the prospective buyers will offer more. Accordingly, we may be constrained to accept a $100,000.00 offer and look to Mrs. Schiller for the balance. The market conditions continue to deteriorate because of tight money and the approaching winter months. The seller has a second mortgage which falls due in early November and we have been advised that foreclosure proceedings will be instituted immediately if the entire mortgage balance is not paid when due.

If Mrs. Schiller is willing to proceed under her contract, I am confident that we can obtain financing for her at the prevailing interest rates. Please let me hear from you if Mrs. Schiller is willing to proceed with the contract; however, I shall notify you in any event of the execution of a new contract by the seller.

Very truly yours,

J. Earle Plumhoff"

Mrs. Schiller's response to this letter was her suit, filed 24 October 1975, to recover the $13,000 deposit.

*Decision*

It is clear that the requirement of obtaining mortgage financing as a condition in a contract for the sale of realty must be given effect unless the condition has been altered by the parties or waived by the one for whose benefit the condition was made. *Traylor v. Grafton*, 273 Md. 649, 332 A. 2d 651 (1975); *Barnes v. Euster*, 240 Md. 603, 214 A. 2d 807 (1965). In this case, the obligations of Mrs. Schiller to buy and Mr. Bushmiller to sell were each conditioned upon Mrs. Schiller's ability to secure within ten (10) days of the contract date (July 25, 1975) a written commitment for a mortgage loan in the amount of $100,000, for a term of twenty (20) years at the "prevailing" interest rate. The burden of satisfying this condition was placed squarely upon Mrs. Schiller. By the terms of the contract she was obligated "to make application immediately and file all necessary papers that are required to complete processing, including resubmission and appeal where necessary". To these express requirements are added the further implied requirement that she take "bona fide, reasonable and prompt action to obtain the financing specified". *Traylor v. Grafton, supra*, at 689.

The trial judge found that Mrs. Schiller did not know what "balloon" financing meant when she discussed the subject of a mortgage with Mrs. Davis of Equitable on 24 July and that it was not until Sunday 27 July when she visited her son in New Hampshire that she learned the meaning of the term. We cannot say that these factual findings were clearly erroneous. Nor do we find erroneous the judge's finding that upon learning the meaning of a "balloon" mortgage and upon being persuaded by her son "as to the problems involved in a large expensive house, [s]he immediately calle[d] off the Equitable Trust Company loan, and then does nothing more". We do not agree, however, that the inaction on her part satisfied the requirement of good faith efforts to obtain the financing specified by the contract. The

judge felt that her inaction was justified and comported with good faith because ". . . even if she had probably made up her mind that she still wanted the house, it would almost certainly have been impossible for her in that very brief period of time to arrange for a written commitment for a loan in the amount of $100,000."

While it is undoubtedly true that it may have been difficult to obtain a loan commitment within the ten-day limitation, patently it would not have been "impossible". In any event, we cannot equate "no" efforts with "reasonable" efforts to obtain the specified financing. *See* also, *Hickman v. U. C. J. Fund,* 255 Md. 267, 257 A. 2d 426 (1969). Moreover, there is no indication in the record that Mrs. Schiller's failure to proceed with further efforts to obtain financing within the allotted time was due in the slightest degree to any thought or knowledge on her part that it could not be obtained within the ten-day period. The conclusion is inescapable that after talking with her son on 27 July she decided she no longer wanted Mr. Bushmiller's "large expensive house", that she could not afford it, and she wanted "out" of her contractual obligations, and that it was for these reasons alone that she ceased any further efforts to obtain the necessary financing. This conclusion is fortified by her refusal to even consider the offer of Mr. Bushmiller's agent to obtain financing for her that was "available at the terms that she wanted". It is true that this offer was made after the ten-day period, and had Mrs. Schiller made good faith efforts within the 10-day period to obtain financing and been unsuccessful, she would have been justified in not accepting the offer. *Barnes v. Euster, supra.* Under the circumstances here, however, we think the refusal of the offer has significance as bearing on the question of Mrs. Schiller's good faith efforts to satisfy the condition precedent in the contract.

In the circumstances we hold that the trial judge was clearly erroneous in his finding that Mrs. Schiller's efforts to obtain financing were made in good faith. It follows that the judgments below must be reversed and the case remanded for entry of judgment for costs in favor of Mr. Bushmiller in

the original suit filed by Mrs. Schiller, and for entry of a judgment for $13,000, plus costs and interest from date of entry in his counter-suit against Mrs. Schiller.

> *Judgments reversed.*
> *Case remanded for entry of judgments as directed by this opinion.*
> *Costs to be paid by appellee.*