Walsh, P.J.
This is a breach of contract action for the purchase and sale of real estate in which plaintiffs, Charles and Nancy Mitchell, as sellers, sought damages from the defendants, Louis and Barbara Jacomme, as purchasers, for failure to use reasonable efforts to obtain the financing required by a purchase and sale agreement. The sole question for decision is whether buyers, who apply to one lending institution for financing but are denied based on the condition of the property and who do not pursue their realtor’s suggestion that other financing might be available, have used reasonable efforts to obtain financing such as to allow cancellation of an agreement which conditioned the buyers’ performance on their ability to obtain a mortgage.[3]
On May 11, 1981, the parties entered into a purchase and sale agreement *346 whereby the defendants, subject to their ability to obtain a $45,000.00 mortgage, agreed to purchase plaintiff s house for $85,000.00. The agreement set July 1, 1981 for closing and contained a well water flow rate disclosure which was initiated by both parties. On May 12,1981, defendants applied to Guaranty Bank and Trust Company for a mortgage. The following day defendants notified the bank that they did not wish to purchase the house. On July 3, 1981, the bank informed the defendants that their mortgage application had been denied and cited the well water flow rate as the reason. Defendants made no further applications and took no action when informed by their realtor that she might be able to obtain financing elsewhere. The parties did not close on the appointed date and plaintiffs later sold their house on October 1, 1981 for $82,500.00. The trial judge entered judgment for the defendants and plaintiffs have appealed.
It is undisputed that a subject to financing clause in a purchase and sale agreement is solely for the buyers’ benefit and as such obligates them to use reasonable efforts to satisfy the financing contingency before the right to cancel arises. Century 21 Acadia Realty & Dev. v. Brough, La. App. 393, So. 2d 287, 289 (1980). Whether or not a party has acted in good faith using reasonable efforts to obtain financing will depend on the facts and circumstances in each particular case. The Massachusetts courts have not specifically ruled on this issue. However, the courts of other jurisdictions have ruled on similar issues and although they have held that an application to only one bank is an unreasonable effort to obtain financing [Bushmiller v. Schiller, 368 A. 2d 1044, 1048-1049 (1977); Liuzza v. Panzer, La. App., 333 So. 2d 689 (1976)], those same courts have recognized that in cases such as the instant one, where the cancellation or rejection of the financing is due to the condition of the property, the purchasers by applying to one lender have done enough to establish a sufficient attempt to procure financing. Katz v. Chatelin, La. App. 321, So. 2d 802, 804 (1975). The evidence in the case at bar indicated that the purchasers' application was rejected because ot the condition of the property, namely the well water flow rate. The buyers had no reason to believe that any other potential lenders would overlook such a defect.
The fact that the defendants informed the bank, the day after submitting an application, that they no longer desired to purchase the house, offers no aid to the plaintiffs for the application had been fully completed and the financing institution gave it every consideration before deciding to deny the financing for a justified reason. The purchasers did all that was required to make a bona fide attempt to obtain the'financing and their subsequent actions had no bearing on the outcome of the mortgage application.
The plaintiffs also assert that the defendants' failure to request their realtor to arrange financing after she had stated that some “might" be available elsewhere indicated a lack of effort. To support this the plaintiffs cite Smith v. Vernon, 286 N.E. 2d 99, 102 (1972) and Fry v. George Elkins Co., 327 P. 2d 905, 907 (1958). However, in each of the cited cases the purchasers were determined not to have used reasonable efforts because they either failed to accept a mortgage which a bank had approved (Smith) or failed to apply for a mortgage which a lending institution indicated that it would grant (Fiy). These cases are distinguishable from the case at bar since here the purchasers had no indication that any other lender would grant their application considering the water rate problem. The realtor’s suggestion that some other financing "might” be available was merely speculation. There is no evidence in the record to indicate that any other lender would have approved a $45,000.00 mortgage or that any other lender would grant financing considering the condition of the property, which led to the earlier *347 rejection.[4]
While the purchasers might possibly have done more, there nevertheless is sufficient evidence in the record to indicate that their conduct constituted reasonable efforts to obtain financing. What amounted to reasonable efforts is a question for the trier of fact in each instance. The buyer “in order to show that he has done enough to meet the condition precedent to his right to cancel need prove not absolute impossibility but merely activity reasonably calculated to obtain the approval..." Stabile v. McCarthy, 336 Mass. 399, 404 (1957). Defendants’ conduct in the instant case has satisfied that standard. The trial judge was therefore warranted in denying plaintiff’s requests for rulings and efforts to obtain financing were reasonable under the circumstances. There was no error.
Report dismissed.

 The plaintiffs had filed requests for ridings on this issue which were denied by the trial judge.

 The judge made detailed findings of fact, warranted by the evidence, including the following:
The sales agreement also contained a disclosure by the Plaintiffs of a well water flow rate 214 gallons per minute ... The Defendants applied for financing at the Guaranty Bank & Trust Co. of Worcester.
The application for financing was denied by the bank for the stated reason that the well capacity was insufficient for mortgage purposes. Prior to the sales agreement which was signed by the Defendants, a purchase of the Plaintiffs' property had fallen through because the buyer was unable to obtain financing. In addition the male Plaintiff’s employer or agent refused to buy the real estate because the well water flow rate was insufficient. In addition the Plaintiff was aware that financing was not available at the Worcester County Institution For Savings because of that bank's requirement that the well water flow rate must be at least 5 gallons per minute.