WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,
Plaintiff,

v.

GATOIL (U.S.A.), INC., and W.A.
Benson (d/b/a Benson and
Associates), Defendants.

Civ. A. No. 84–3240.

United States District Court,
District of Columbia.

May 8, 1985.

Robert L. Polk, William B. Bircher, Thomas B. Dorrier, W.M.A.T.A., Washington, D.C., for plaintiff.

Thomas York, Donald N. Rothman, David W. Parsons, Baltimore, Md., and Jerry R. Goldstein, Bethesda, Md., for defendant Gatoil.

Rob Ross Hendrickson, Frank M. Benson, Jr., Baltimore, Md., and Jacob Dweck, Beverly J. Rudy, Washington, D.C., for Benson and Associates.

## MEMORANDUM

GESELL, District Judge.

This contract dispute is before the Court on cross-motions for summary judgment. Affidavits and documents establish the following undisputed material facts.[1]

Washington Metropolitan Area Transit Authority (WMATA) and Benson and Associates (B & A) executed a contract in June 1983 under which B & A agreed to supply over three million gallons of diesel fuel at a firm fixed price. This contract was awarded to B & A as low bidder for WMATA's annual diesel fuel requirements for its fleet of buses. It contemplated performance between July 1, 1983, and June 30, 1984.

B & A was a 50–50 joint venture between W. Arthur Benson and Gatoil (U.S.A.) Inc.

---

1. Neither defendant obeyed Local Rule 1–9(i), which requires a party seeking summary judgment to file a statement of material facts as to which the party contends there is no genuine issue, with record references, and which also requires a party opposing summary judgment to file a statement of genuine factual issues. Neither defendant disputes the underlying facts as stated in plaintiff's motion, contesting only the inferences to be drawn from those facts. Plaintiff likewise raises no issue of disputed fact. Accordingly, this is a proper case for summary judgment.

The former was to provide the operational functions and the latter the financing. Gatoil (U.S.A.) was a wholly owned subsidiary of Gatoil International, Inc., of Geneva, Switzerland. After bids were opened in May showing that B & A was the low bidder, Benson represented to WMATA that B & A would provide a performance bond to guarantee its performance. In addition, Gatoil (U.S.A.) represented to WMATA that Gatoil was "a multi-national marketing, refining and trading company that enjoys a world-wide reputation of par excellence."

The full amount of diesel fuel involved was broken into separate contracts covering each of WMATA's governmental jurisdictions. These were forwarded by WMATA on June 15, 1983 with its signature for signature by B & A, along with a statement that "In the event the performance bond is not received prior to June 30, 1983, this contract is null and void." B & A executed the contract on June 24, 1983. The contract itself stated:

> Effectivity of this contract is contingent upon the submittal of a performance bond in the amount of 15% of the entire bid as submitted in response to Solicitation No. 11800–RS. This bond must be received prior to June 30, 1983.

WMATA was assured the performance bond would be forthcoming routinely, and other steps were taken looking toward full implementation of the contract, which was to be WMATA's only source of diesel fuel to replace its prior contract expiring on June 30.

On June 24, 1983, WMATA stated that "In the interest of satisfactorily proceeding with the contract, the date of the bond submitted is extended to July 15, 1983," and said it would not accept full delivery until it received the bond. But on June 28 by hand-delivered letter, WMATA advised B & A that the June 24 letter was mistaken in deferring delivery until after receipt of

the bond. The June 28 letter authorized B & A to begin delivery under the contract on July 1, declaring all other provisions of the contract in effect pending receipt of the bond on July 15, 1983. On July 1, 1983, WMATA revised its request, specifying first delivery on July 11, 1983, but again stating "we expect to receive your bond on or before July 15, 1983 absent advice from you to the contrary."

On July 5, B & A gave notice to WMATA by Western Union Mailgram that it would not accept what it characterized as WMATA's "unilateral attempt to change the contract."

That was the apparent extent of the joint venture's written contacts with WMATA concerning the performance bond and the contract. Several other developments bear on this course of dealings.

By letter dated June 21, 1983, Gatoil (U.S.A.) advised B & A that in view of B & A's failure to confirm by June 15, Gatoil (U.S.A.)'s suppliers could no longer supply B & A with the "product," *i.e.*, diesel fuel.[2] On June 29, B & A first advised WMATA that it was having trouble obtaining fuel and would not be able to begin deliveries on July 1. From June 29 to July 6, a WMATA procurement official was in regular contact with B & A and was told by B & A that it had contacted various suppliers but could not obtain a source of fuel for the contract. WMATA then concluded that B & A could not supply. WMATA covered its needs by extending its old contract through July 9, obtaining a second supply for the rest of July after B & A appeared unable to deliver, and then rebidding the contract for the remaining 11 months.

No performance bond was ever supplied. The parties agree that supplying the bond was a condition precedent to the contract. Defendants argue that the contract thus never came into existence and there was no breach. WMATA contends, and the defendants agree, that because performance

---

**2.** Gatoil later indicated in an answer to an interrogatory that it "made no effort to hedge, cover or perfect the right to obtain fuel at certain prices during the anticipated period of contract performance in connection with or as a result of Benson and Associates' bid...." Market prices apparently went up between the time of B & A's successful bid and July 1.

of the condition precedent was in the power of the defendants, they had a duty to exercise good faith in trying to obtain the bond.[3] The courts generally characterize this duty of good faith as an implied promise of the contract. *See R.A. Weaver & Associates, Inc. v. Haas & Haynie Corp.,* 663 F.2d 168, 176–77 (D.C.Cir.1980); *Bushmiller v. Schiller,* 35 Md.App. 1, 368 A.2d 1044, 1048 (1977).

The key issue thus becomes whether the defendants' acts constituted good faith. Each side contends it is entitled to summary judgment on the facts before the Court.[4]

The performance bond was never required by WMATA's bid solicitation but was offered by the defendants in lieu of a more cumbersome method of demonstrating their ability to perform. Gatoil (U.S.A.) was the party responsible for obtaining the bond. It told WMATA it would get the bond from Marsh and McLennan, a Houston bonding firm. A WMATA official contacted Marsh and McLennan and B & A several times in May and June and was told the bond would be issued routinely.

However, on June 24, the same day B & A executed the contract and three days after Gatoil (U.S.A.) had told its partner it could not provide the fuel, Marsh and McLennan advised Gatoil it could not obtain a bond for Gatoil without a bank letter of credit. Marsh and McLennan also advised that Gatoil's parent had sufficient assets that if it would indemnify its subsidiary, a bond could be obtained without any letter of credit. The bond would have cost less than $5,000.

Gatoil (U.S.A.) did not follow up this letter from Marsh & McLennan in any way by asking for a modification on the letter of credit or by offering any sort of indemnification from its parent.[5] In an answer to interrogatories, Gatoil (U.S.A.) indicated it did not follow up because "[a]t that time . . . Gatoil's working capital was fully committed to other projects and an additional amount of working capital would have had to be infused into Gatoil in order for Gatoil to have procured such a letter of credit. Accordingly, at that time, Gatoil [ (U.S.A.) ] was financially unable to provide a letter of credit."

Gatoil (U.S.A.) never communicated these problems to WMATA and never asked WMATA to waive or modify the bond requirement.

 The requirement of good faith in performing a condition precedent is a requirement to make reasonable efforts. *E.g., Bushmiller v. Schiller,* 35 Md.App. 1, 368 A.2d 1044, 1048 (1977).[6] No such good faith effort was made here. It is clear that Gatoil went through the motions of applying for a bond but that when the first obstacle developed, it used that as an excuse to back out of the contract which the joint venture was having difficulty performing.

Several other facts are relevant in reaching this finding. In bidding for the contract Gatoil (U.S.A.) and Benson both held out the world-wide resources of the Gatoil group, but the limited funds of Gatoil (U.S.A.) later became a shield for nonperformance. As noted above, Gatoil International owns 100 percent of Gatoil (U.S.A.). Kahil J. Ghattas, president of Gatoil (U.S.A.), is also chairman of Gatoil International. Gatoil (U.S.A.) has offered no reason for why the parent could not have indemnified the subsidiary or provided the letter of

---

**3.** This is therefore not a case where good faith is irrelevant because the party performing the condition precedent has an absolute right to cancel the contract. *See Shear v. National Rifle Ass'n of America,* 606 F.2d 1251, 1256 (D.C.Cir.1979); *Dixon v. Bernstein,* 182 F.2d 104 (D.C.Cir.1950).

**4.** Defendants were expressly invited by the Court to file any cross-claims but declined to do so.

**5.** Affidavit of Gary K. Cooper, Marsh and McLennan, at 2.

**6.** No cases in the District of Columbia define the good faith requirement. While the contract was executed in the District of Columbia and D.C. law controls, Maryland has a substantial interest in the case by virtue of the parties' contemplation that substantial parts of the contract would be performed in Maryland, where the operating arm of the joint venture was located.

credit, or why the subsidiary could not have rearranged its capital to provide collateral for the letter of credit. In addition, from WMATA's communications with B & A, it is clear that WMATA, the beneficiary of the condition precedent and thus the party with a right to waive or excuse its non-performance, was eager to go ahead with the contract and willing temporarily to waive performance of the condition. Defendants seized on this as an attempt to modify the contract and rejected it out of hand, thus further showing their lack of good faith. The Court concludes on all the evidence that defendants breached their duty to perform the condition precedent in good faith and thus breached the contract.

■ Defendants also argue in the alternative that WMATA failed to provide written purchase orders as required by the contract and failed to provide notice of default and an opportunity to cure. These arguments wholly lack merit. Defendants failed to obtain the bond, failed to enter any discussions with WMATA to work out the bond problem, and expressly indicated their inability to deliver fuel. WMATA was not required after that to perform certain hollow rituals to preserve its rights under the contract. The law does not require useless acts.

Accordingly, defendants' motions for summary judgment are denied, and plaintiff's motion for summary judgment is granted. WMATA has shown that its damages from the breach, in higher prices it had to pay for the same amount of fuel, totaled $746,018.68. An appropriate Order is filed herewith entering judgment in that amount for plaintiff.